## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

| | | |
|---|---|---|
| **M&S ADVISORY GROUP, INC.** | : | Case No. C-1-02-522 |
| Plaintiff, | : | |
| v. | : | **PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT** |
| **EYEMART EXPRESS, LTD.,** | : | |
| | | **Judge Spiegel** |
| Defendant. | : | **Magistrate Judge Hogan** |

Plaintiff M&S Advisory Group, Inc., ("M&S") respectfully moves this honorable Court for summary judgment against Defendant EyeMart Express, Ltd. ("EyeMart") on the grounds that there are no genuine issues of material fact and M&S is entitled to judgment as a matter of law in its favor and against EyeMart on its Complaint and in its favor and against EyeMart on the Counterclaims asserted by EyeMart. This Motion is made pursuant to Rule 56 of the Federal Rules of Civil Procedure, the Affidavit of Martin Sherman in Support of Plaintiff's Motion for Summary Judgment, the depositions filed in the case and the attached memorandum.

/s/ Robert A. Pitcairn, Jr._____
Robert A. Pitcairn, Jr. (0010293)
Trial Attorney for Plaintiff
255 East Fifth Street, Suite 2400
Cincinnati, Ohio 45202-4787
(513) 977-3477 – telephone
(513) 762-0077 – facsimile
rpitcairn@katzteller.com – e-mail

OF COUNSEL

Wijdan Jreisat
Katz, Teller, Brant & Hild
255 East Fifth Street, Suite 2400
Cincinnati, Ohio 45202-4787
(513) 721-4532

1

**MEMORANDUM**

I. **INTRODUCTION**

This lawsuit arises out of a breach of contract by EyeMart of its obligations to M&S. EyeMart hired M&S to serve as a consultant to EyeMart in its plans to expand its business with new stores. M&S proceeded to do so but, without cause or warning, EyeMart unilaterally terminated the Agreement between the two parties. As a result, M&S has filed this action to recover for EyeMart's breach of the Agreement. Later in the lawsuit, EyeMart counterclaimed seeking contractual and extra-contractual damages from M&S.

II. **FACTS**

In early 2002, EyeMart, which owns several retail optical stores, was interested in expanding its business and wished to do so by opening stores in shopping malls and centers throughout the country. Affidavit of Martin Sherman in Support of Plaintiff's Motion for Summary Judgment ("Sherman Affidavit"), ¶4, a copy of which is attached hereto and incorporated herein as Exhibit A. M&S and its principal, Martin Sherman, had been involved in advising a variety of retail businesses (particularly in developing and negotiating retail space in shopping centers and malls). Sherman Affidavit, ¶3.

EyeMart sought out M&S' services to help with this expansion. Sherman Affidavit, ¶4. EyeMart negotiated the terms of a consulting agreement and, M&S and EyeMart entered into a written Consulting Agreement effective February 1, 2002 (the "Agreement"). Sherman Affidavit, ¶5. A copy of that agreement was attached as Exhibit A to the Complaint. The initial term of the Agreement was two years commencing on February 1, 2002 and ending on January 31, 2004.

Under the terms of the Agreement, EyeMart retained M&S as a consultant on matters relating to the strategy of selecting retail store locations, implementation of the strategy and lease negotiations. EyeMart was required to pay M&S consulting fees in the amount of $50,000 plus a guaranteed minimum amount of additional consulting fees in the amount of $150,000 for a total of $200,000 per annum. In addition, M&S could earn additional consulting fees based on leases and lease renewals and was to be reimbursed for its reasonable expenses incurred in the performance of the Agreement. The Agreement could only be terminated for cause, which was defined as "the breach of any material provision of this Agreement by the other party, which breach is not cured within thirty (30) days after written notice" or M&S's failure to make Mr. Sherman "available on a continuing and active basis" "by reason of his health."

In the short few months in which M&S provided services to EyeMart, M&S began developing appropriate locations to respond to EyeMart's plan of opening approximately fifteen new stores each year and renewing leases for existing locations. Sherman Affidavit, ¶¶6-7. M&S developed various opportunities to locate stores in the pre-determined strategic markets. These efforts included lease negotiations for the locations identified. Sherman Affidavit, ¶7. Several of the market opportunities targeted and developed by M&S's efforts were accepted by EyeMart and proceeded to the conclusion of lease agreements for the store locations. For example, M&S assisted EyeMart in locating and negotiating terms for locations in Ft. Wayne, Indiana; Lancaster, Pennsylvania; and York, Pennsylvania. M&S also consulted with EyeMart regarding and/or negotiated for possible locations in Montgomery, Alabama; Bakersfield and Palm Springs, California; Champaign, Illinois; Portland, Maine; Fargo,

North Dakota; Harrisburg and Pittsburgh, Pennsylvania; Memphis, Tennessee and others. For various reasons, EyeMart decided not to proceed with those locations. Sherman Affidavit, ¶8.

As part of its efforts, M&S made plans to attend the 2002 Spring Convention of the International Council of Shopping Centers in Las Vegas, Nevada. Having attended this yearly convention since 1967, Mr. Sherman was aware of the players involved and was able to arrange various meetings to continue to negotiate on behalf of EyeMart. For example, M&S set meetings with Lance Johnson to discuss the negotiations for a location in York, Pennsylvania, with Monica Smith to discuss possible locations available in her portfolio, and with Joe Aristone to continue negotiations for a location in Harrisburg, Pennsylvania. Sherman Affidavit, ¶9. Allegedly unhappy with this effort, EyeMart abruptly terminated the Agreement by letter dated May 23, 2002. Sherman Affidavit, ¶11. A copy of that letter was attached as Exhibit B to the Complaint.

When asked to specify the defaults of the Agreement that led to this abrupt termination, EyeMart explained:

> Marty Sherman promised us that he would help us with our strategy, get that strategy going, implementation, and open up stores – twelve-plus stores. And he failed to do that throughout the entire process. We gave him notification upon notification with over thirty days to correct, to fix.
> You know, we went to ICSC hoping – because ICSC was part of that agreement. You know, "Come to Vegas, set up meetings," is what was represented to EyeMart Express and, you know, he didn't do any of this. And we had no leases, no stores opening.

Deposition of Jonathan Herskovitz, Volume I, filed separately and incorporated herein by reference ("Herskovitz Deposition"), pp.187-188.

The Agreement requires that any alleged defaults be brought to the other party's attention, with an opportunity to cure such a default. EyeMart is a sophisticated business entity. Jonathan Herskovitz, the EyeMart representative who had the day to day contact with M&S, was certainly familiar with such default provisions and understood them:

> Q.	Have you seen those kinds of provisions in other agreements that you've negotiated?
> A.	In certain types of language, yes. Exactly, I can't recall.
> Q.	But you're familiar with the concept of requiring some notice and an opportunity to cure upon breach of an agreement?
> A.	Yes.
> Q.	And you - - Do you understand the purpose of those provisions?
> A.	Yes.
> Q.	And what is that?
> A.	To cure a default or a breach on the other party's behalf.
> Q.	Would it be accurate to say that the intent is to allow the parties to work something out, if a problem develops, before the agreement is terminated?
> A.	You would hope, yes.
> Q.	So you agree that's the purpose of those provisions?
> A.	Is to tell the other party the contract has been breached, and to follow the guidelines that are in the contract for them to cure; and if they don't cure, then they're in default.

Herskovitz Deposition, pp. 29-30. In his deposition, Mr. Herskovitz went on to acknowledge the importance of providing such notice:

> Q.	Is that very important to do?
> A.	Very.
> Q.	Why?
> A.	Because there's a representation – a promise to do certain things, whether it be a landlord or Mr. Sherman, and we're paying money to that party. And we expect those things that are required, that the contract calls for them to do those things. So if they're not being done, it's up to EyeMart

> Express to notify that party that they're breaching and to
> serve them notice to correct it.
> Q. And to provide an opportunity to cure the breach?
> A. And to provide an opportunity within that allotted time.

Herskovitz Deposition, p. 30.

Rather than provide such an opportunity to cure, as required by the Agreement, EyeMart unilaterally terminated the Agreement. Sherman Affidavit, ¶11. There can be no dispute that the provisions of the Agreement as to termination were not honored by EyeMart.[1] It appears that EyeMart wanted the advantage of the valuable information that M&S could provide without fully compensating M&S for that information as set forth in the Agreement. Sherman Affidavit, ¶12.

### III. <u>STANDARD FOR SUMMARY JUDGMENT</u>

This Court is well familiar with the standard for summary judgment. Rule 56(c) of the Federal Rules of Civil Procedure provides <u>inter alia</u> as follows:

> The judgment sought shall be rendered forthwith if the pleadings,
> depositions, answers to interrogatories, admissions on file, together with
> the affidavits, if any, show that there is no genuine issue as to any material
> fact and that the moving party is entitled to judgment as a matter of law.

Rule 56(e) states that when a motion for summary judgment is made and properly supported, the non-moving party cannot rest on the mere allegations or denials of its pleadings, but must by affidavit or otherwise set forth specific facts showing that there is a genuine issue of material fact for trial. The narrow questions that must be decided are

---

[1] In fact, when this defect was brought to EyeMart's attention, its counsel initially claimed that the reason for terminating the Agreement was Mr. Sherman's alleged inability to perform the Agreement competently due to health reasons. Sherman Affidavit, ¶11. Thus, EyeMart has tacitly admitted that it did not have the right to terminate the Agreement for any alleged defaults by trying to claim that Mr. Sherman was incompetent and, thus, trying to bypass the notice requirements otherwise required by the Agreement.

whether there exists a "genuine issue as to any material fact" and whether the "moving party is entitled to judgment as a matter of law." Rule 56(c).

The United States Supreme Court has established that summary judgments must be rendered in appropriate cases. For instance, in Celotex Corp v. Cattrett, 477 U.S. 317 (1986), the Court held that a party seeking summary judgment bears the responsibility of informing the court of the basis for its motion and identifying the portion of the pleadings, depositions, affidavits, etc. which demonstrate the absence of a genuine issue of material fact. Once the moving party satisfies this initial burden, the burden then falls on the non-moving party to produce evidence of every issue on which it has the burden of proof at trial, sufficient to support a jury verdict in its favor. If the non-moving party fails to make the required showing, the moving party is entitled to judgment as a matter of law. See also, Guarino v. Brookfield Township Trustees, 980 F.2d 399 (6th Cir. 1992) and Street v. J.C. Bradford & Co., 886 F.2d 1472 (6th Cir. 1989).

There is no genuine issue of material fact for trial unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party. Anderson v. Liberty Lobby, 477 U.S. 242 (1986). Conclusory allegations are not sufficient to defeat a motion for summary judgment. McDonald v. Union Camp. Corp., 898 F.2d 1155 (6th Cir. 1990). Summary judgment should be granted if a party who bears the burden of proof at trial does not establish an essential element of his or her case. Tolton v. American Biodyne, Inc., 48 F.3d 937, 941 (6th Cir. 1995). Application of these principles and the relevant substantive law mandates that M&S be granted

summary judgment as a matter of law on its claim and on all claims asserted by EyeMart in its counterclaim.

## IV.     EYEMART BREACHED THE AGREEMENT

In order to establish its claim of a breach of contract, M&S must demonstrate "the existence of a binding contract or agreement; the nonbreaching party performs its contractual obligations; the other party fails to fulfill its contractual obligations without legal excuse; and the nonbreaching party suffers damages." Garofalo v. Chicago Title Ins. Co., 104 Ohio App.3d 95, 108, 661 N.E.2d 218, 226 (1995); Laurent v. Flood Data Serv., Inc., 146 Ohio App.3d 392, 398, 766 N.E.2d 221, 225 (2001).  The parties have admitted that the Agreement existed and was binding on both parties.  Likewise, there can be no dispute that M&S was providing consulting services as required under the Agreement.  Sherman Affidavit, ¶¶6-8.

Further, EyeMart's unilateral termination of the Agreement was clearly a breach of its contractual obligations.  Under Ohio law, the law governing this case, construction of a clear and unambiguous written contract is a matter of law and there is no issue of fact to be determined.  Nationwide Mut. Fire Ins. Co. v. Guman Bros. Farm, 73 Ohio St. 3d 107, 108, 652 N.E.2d 684, 686 (1995) (citing Inland Refuse Transfer Co. v. Browning – Ferris Indus. of Ohio, Inc., 15 Ohio St. 3d 321, 322, 474 N.E.2d 271, 272 (1984)); Alexander v. Buckeye Pipe Line Co., 53 Ohio St.2d 241, 245, 374 N.E.2d 146, 150 (1978). "Contracts are to be interpreted to carry out the intent of the parties, as that intent is evidenced by the contractual language." Pharmacia Hepar, Inc. v. City of Franklin, 111 Ohio App. 3d 468, 475, 676 N.E.2d 587, 592 (1996) (citing Aultman Hosp.

Assn. v. Community Mut. Ins. Co., 46 Ohio St. 3d 51, 53, 544 N.E.2d 920, 922-23 (1989)). "Where the parties, following negotiations, make mutual promises which thereafter are integrated into an unambiguous written contract, duly signed by them, courts will give effect to the parties' expressed intentions." Id.

Applying the foregoing law establishes, beyond debate, that EyeMart could not terminate the Agreement for any alleged failures to perform unless it had given M&S proper notice of those failures and an opportunity to cure. The language could not be more clear:

> This Agreement may be terminated by either party for "Cause" which shall be defined as the breach of any material provision of this Agreement by the other party, which breach is not cured within thirty (30) days after written notice thereof is delivered to such other party, or Consultant's failure by reason of his health to make Martin Sherman available on a continuing and active basis as principal to provide the services set forth hereunder.

EyeMart failed to observe the requirements of the Agreement for termination and therefore breached the Agreement.

"It is well settled that 'if in the contract a particular mode is provided, by which a party may rescind it . . . it can only be done in the mode provided.' Any attempt to rescind the contract by means other than those specified will be ineffective unless those requirements are waived by the parties." Puffer v. National Business Consultants, Inc., No. C-77295, 1978 Ohio App. Lexis 8270, *4-5 (Hamilton County, September 5, 1978)(holding that a party failed to properly terminate an agreement because of failure to provide notice as required by the agreement)(copy attached for the Court's convenience). EyeMart failed to do so in the mode required by the Agreement.

Finally, there can be no question as to the damages due from that breach. At the very least, the Agreement required that M&S be paid $200,000 a year for the two year

initial term of the Agreement.  While M&S had the opportunity to earn additional amounts under the Agreement, it was guaranteed that $400,000 at a minimum.  EyeMart only paid $41,666.64 of that amount.  Sherman Affidavit, ¶13.  Therefore, there remains an additional Three Hundred Fifty Eight Thousand Three Hundred Thirty Three Dollars and Thirty Six Cents ($358,333.36) due under the Agreement.  Sherman Affidavit, ¶13.  M&S is entitled to pre-judgment interest, at the statutory rate, for these amounts as of when they were due.  As such, M&S is entitled to judgment in the principal amount of Three Hundred Fifty Eight Thousand Three Hundred Thirty Three Dollars and Thirty Six Cents ($358,333.36) with accrued interest as of May 1, 2004 in the amount of Sixty Two Thousand Six Hundred Eighty Six Dollars and Six Cents ($62,686.06) for a total of Four Hundred Twenty One Thousand Nineteen Dollars and Twenty Six Cents ($421,019.26) with additional interest thereon from May 1, 2004.  Sherman Affidavit, ¶13.

In addition, EyeMart was to pay for reasonable expenses incurred by M&S in performance of the Agreement.  Sherman Affidavit, ¶14.  In conjunction with the termination of the Agreement, EyeMart also stopped payment of a check issued to M&S for reimbursement of an earlier trip to Chicago, in the amount of One Thousand Four Hundred Eighteen Dollars and Sixty Two Cents ($1,418.62) with accrued interest as of May 1, 2004 in the amount of Two Hundred Seventy Seven Dollars and Fifty One Cents ($277.51) for a total of One Thousand Six Hundred Ninety Six Dollars and Thirteen Cents ($1,696.13) with additional interest thereon from May 1, 2004.  Sherman Affidavit, ¶14.  Therefore, the calculation of damages due from the breach is merely mathematical.

## V. EYEMART'S COUNTERCLAIMS SHOULD BE DISMISSED

### A. Breach of Contract

In addition to granting M&S judgment against EyeMart on M&S's claim in the Complaint, this Court should also grant judgment in favor of M&S on the claims asserted in EyeMart's counterclaim in this action. M&S performed as required by the Agreement. To the extent that EyeMart now claims that M&S failed to do so, its remedy was available under the Agreement. It could have provided notice and an opportunity to cure. EyeMart cannot now seek to recover damages without having exercised the remedies available under the Agreement.

Moreover, EyeMart cannot seek to impose the specific duties complained of when these specific duties were not imposed by the Agreement. As the Ohio Supreme Court explained: "[t]he parol evidence rule states that 'absent fraud, mistake, or other invalidating cause, the parties' final written integration of their agreement may not be varied, contradicted or supplemented by evidence of prior or contemporaneous oral agreements, or prior written agreements'." Galmish v. Cicchini, 90 Ohio St. 3d 22, 27, 734 N.E. 2d 782, 788 (2000)(citation omitted).

> The rule as applied to contracts is simply that as a matter of substantive law, a certain act, the act of embodying the complete terms of an agreement in a writing (the 'integration'), becomes the contract of the parties. The point then is, not how the agreement is to be proved, because as a matter of law the writing is the agreement. Extrinsic evidence is excluded because it cannot serve to prove what the agreement was, this being determined as a matter of law to be the writing itself. The rule comes into operation when there is a single and final memorial of the understanding of the parties. When that takes place, prior and contemporaneous negotiations, oral or written, are excluded; or, as it is sometimes said, the written memorial supersedes these prior or contemporaneous negotiations.

Galmish, 90 Ohio St. 3d at 27, 734 N.E. 2d at 789 (citation omitted).

Generally, "a written contract will be presumed to be a complete 'integration' of the parties' agreement. This presumption is strongest where a written agreement contains a merger or integration clause expressly indicating that the agreement constitutes the parties' complete and final understanding regarding its subject matter." Fontbank, Inc. v. Compuserve, Inc., 138 Ohio App.3d 801, 808, 742 N.E.2d 674, 678-679 (2000)(confirming that the parol evidence rule prohibits the plaintiff from presenting any evidence to support its claims for breach of contract and promissory estoppel where the agreement involved included a merger clause).

The Agreement had a merger clause that provided:

> This Agreement (i) constitutes the entire Agreement between EyeMart, Martin Sherman and Consultant in connection with the subject matter of this Agreement, (ii) supersedes any and all other agreements, either oral or written, between EyeMart, Martin Sherman and Consultant in connection with the subject matter of this Agreement, and (iii) may not be modified orally and no modification shall be effective unless in writing and signed by EyeMart, Martin Sherman and Consultant.

In short, EyeMart cannot now add to the obligations set forth in the Agreement. So, to the extent it claims that M&S was required to open a certain number of stores in a certain time frame or was required to arrange meetings at a specific convention and that any such failures were in breach of the Agreement, it is precluded from adding these additional "duties" when the Agreement does not include them.

### B.     Promissory Estoppel

In addition to its breach of contract claim, EyeMart has also asserted a promissory estoppel claim against M&S. EyeMart claims M&S made "promises and representations regarding what it could and would do for EyeMart pursuant to an agreement between M&S and EyeMart" and proceeds to provide examples of these alleged "promises": that M&S would "fully negotiate 12 to 18 leases in the first year,"

that it would continue to negotiate leases at that same pace in subsequent years, that it could obtain lower rents on leases, etc. Amended Counterclaim, ¶1. EyeMart asserts its reliance on these representations.

Even if these allegations are to be believed, EyeMart cannot re-cast its breach of contract claim in these terms and hope to escape from the strictures of the Agreement in that fashion. EyeMart had a simple way to require compliance with the representations claimed to have been made by M&S. It could easily have specified these detailed requirements in the Agreement. In fact, no such requirements were specified. EyeMart will be precluded from introducing evidence of these alleged representations by the parol evidence rule.

EyeMart cannot proceed on its claim because the promises on which it seeks to rely were allegedly made prior to or contemporaneously with the Agreement. Having failed to include these specifics in the Agreement or to provide notice to M&S of its expectation that these specifics be performed, EyeMart cannot now seek to impose liability by other means by claiming promissory reliance on these alleged representations. Ed Schory & Sons, Inc v. Soc. Natl. Bank, 75 Ohio St.3d 433, 440, 662 N.E.2d 1074, 1080 (1996) (holding that parol evidence rule precluded promissory estoppel claim where there was a clear written agreement between the parties); Kashif v. Cent. State Univ., 133 Ohio App.3d 678, 684, 729 N.E.2d 787, 791 (1999)(upholding the trial court's determination that the plaintiff could not invoke promissory estoppel to contradict the provisions of the written agreement); Fontbank, Inc.( parol evidence rule prohibits presentation of any evidence to support claim for promissory estoppel).

Even if EyeMart wishes to ignore the parol evidence rule, it is well settled under Ohio law that "a breach of contract does not create a tort claim." <u>Textron Fin. Corp. v. Nationwide Mut. Ins. Co.</u> 115 Ohio App. 3d 137, 151, 684 N.E.2d 1261,1270 (1996), *discretionary appeal not allowed*, 78 Ohio St. 3d 1425, 676 N.E. 2d 531 (1997). There is an "unbroken line of authority in Ohio that a breach of contract does not create a tort claim, regardless of the motive of the promisor…." <u>Battista v. Lebanon Trotting Assn.</u>, 538 F.2d 111, 118 (6th Cir. 1976). Thus, "the existence of a contract action generally excludes the opportunity to present the same case as a tort claim." <u>Wolfe v. Continental Cas. Co.</u>, 647 F.2d 705, 710(6th Cir. 1981)(construing Ohio law).

Moreover, the "promises" and "representations" alleged by EyeMart all relate to the work that M&S was to perform pursuant to the Agreement. (Counterclaim, ¶1). Thus, the only "duty" that M&S allegedly breached was its contractual duty to perform the Agreement. This is exactly the same breach set forth in the breach of contract claim. (Counterclaim. ¶12). Ohio courts have uniformly held that a cause of action in tort must be supported by a breach of a legal, not a contractual, duty. The rationale for this doctrine is that "'[t]ort law is not designed, however, to compensate parties for losses suffered as a result of a breach of duties assumed only by agreement.'" <u>Floor Craft Floor Covering, Inc. v. Parma Community Gen. Hosp. Assn.</u>, 54 Ohio St.3d 1, 7, 560 N.E.2d 206, 211 (1990)(quoting <u>Sesenbrenner v. Rust, Orling & Neale</u>, 236 Va. 419, 425, 374 S.E.2d 55, 58(1988)).

As one appellate court succinctly held: "A tort claim based upon the same actions as those upon which a claim of contract breach is based will exist independently of the contract action only if the breaching party also breaches a duty owed separately from

that created by the contract, that is, a duty owed even if no contract existed." Textron Fin Corp., 115 Ohio App. 3d at 151, 684 N.E.2d 1261, 1270.  This has long been the rule in Ohio.  See, e.g., Bowman v. Goldsmith Bros. Co. (Ct. App. 1952), 63 Ohio Law Abs. 428, 109 N.E. 2d 556 ("The mere omission to perform a contract obligation is never a tort unless the omission is also the omission to perform a legal duty.  In other words, an action of tort for negligence cannot be maintained unless the defendant's conduct constituted the breach of a duty imposed by law, apart from it being a breach of an obligation created by agreement of the parties…."); Battista, 538 F.2d at 117 ("A tort exists only if a party breaches duty which he owed to another independently of the contract, that is, a duty which would exist if no contract existed … The tort liability of parties to a contract arises from the breach of some positive legal duty imposed by law because of the relationship of the parties, rather than a mere omission to perform a contract obligation.") (construing Ohio law).  It is clear from the allegations made that the "duties" M&S allegedly breached – i.e. negotiating on behalf of EyeMart – were precisely the duties required of it in the Agreement.  Moreover, there can be no claim that these duties existed as a matter of law, independently of M&S' agreement to assume them.

Likewise, the claimed damages are identical to the claimed damages for breach of contract.  Thus, the allegations setting forth the promissory estoppel claim incorporate by reference the allegations in the breach of contract claim and further assert the same damages were caused by EyeMart's reliance on M&S's representations.  (Amended Counterclaim, ¶16).  Ohio courts have uniformly held that a cause of action in tort required separate damages from damages for breach of contract.

"In addition to containing a duty independent of that created by contract, an action arising out of contract which is also based upon tortious conduct must include actual damages attributable to the wrongful acts of the alleged tortfeasors which are in addition to those attributable to the breach of contract." <u>Textron Fin. Corp.</u>, 115 Ohio App. 3d at 151, 684 N.E.2d at 1271. Rather, EyeMart must allege "evidence of damages distinct from, and in addition to" its damages alleged for breach of contract. *Id.* Therefore, M&S is entitled to judgment against EyeMart on its counterclaims as well.

## VI.     **CONCLUSION**

Based on the foregoing, M&S is entitled to judgment against EyeMart. EyeMart has indisputably breached the Agreement by terminating it without notice. Even assuming that M&S would not have earned any additional consulting fees during the term of the Agreement, by its terms, it is entitled to payment of the amounts due in the principal amount of Three Hundred Fifty Eight Thousand Three Hundred Thirty Three Dollars and Thirty Six Cents ($358,333.36) with accrued interest as of May 1, 2004 in the amount of Sixty Two Thousand Six Hundred Eighty Six Dollars and Six Cents ($62,686.06) for a total of Four Hundred Twenty One Thousand Nineteen Dollars and Twenty Six Cents ($421,019.26)  and reimbursement of expenses in the principal amount of One Thousand Four Hundred Eighteen Dollars and Sixty Two Cents ($1,418.62) with accrued interest as of May 1, 2004 in the amount of Two Hundred Seventy Seven Dollars and Fifty One Cents ($277.51) for a total of One Thousand Six Hundred Ninety Six Dollars and Thirteen Cents ($1,696.13). Sherman Affidavit, ¶¶13-14. Therefore, M&S is entitled to judgment against EyeMart in the total amount of Four

Hundred Twenty Two Thousand Seven Hundred Fifteen Dollars and Thirty Nine Cents ($422,715.39) with additional interest thereon from May 1, 2004.  Sherman Affidavit, ¶15.

      Moreover, EyeMart cannot establish its counterclaims.  It failed to give notice of any alleged breaches or to exercise the remedy provided for them by the Agreement.  The parol evidence rule prohibits it from seeking to vary the terms of the Agreement and prevents it from offering evidence in support of its promissory estoppel claim.  The promissory estoppel claim is likewise barred because the only duty M&S allegedly breached was a contractual duty for which tort law does not recognize a right to recover and the only damages alleged to have been proximately caused by the alleged promises were damages alleged to have resulted from the breach of contract.  The Court should therefore grant judgment in favor of M&S on the Counterclaim.

    /s/ Robert A. Pitcairn, Jr._____
Robert A. Pitcairn, Jr. (0010293)
Trial Attorney for Plaintiff
255 East Fifth Street, Suite 2400
Cincinnati, Ohio 45202-4787
(513) 977-3477 – telephone
(513) 721-7120 – facsimile
rpitcairn@katzteller.com – e-mail

OF COUNSEL:

Wijdan Jreisat
Katz, Teller, Brant & Hild
255 East Fifth Street, Suite 2400
Cincinnati, Ohio 45202-4787
(513) 721-4532

## **CERTIFICATE OF SERVICE**

    I hereby certify that on March 15, 2004, I electronically filed the foregoing Plaintiff's Motion for Summary Judgment with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following: Michael W. Hawkins and Jon B. Allison, Trial Attorneys for Defendant, Dinsmore & Shohl, 255 E. Fifth Street, Suite 1900, Cincinnati, Ohio 45202.

                                                  /s/ Robert A. Pitcairn, Jr._____
                                                  Robert A. Pitcairn, Jr.

KTBH:C:\NrPortbl\iManage\TOBRIEN\583778_1.DOC