IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| M&S ADVISORY GROUP | : | Case No. C-1-02 522 |
| Plaintiff, | : | **AFFIDAVIT OF MARTIN SHERMAN IN SUPPORT OF PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT** |
| v. | : | |
| EYEMART EXPRESS, LTD. | : | |
| Defendant. | : | Judge Spiegel |

STATE OF OHIO          )
                                   )    SS:
COUNTY OF HAMILTON  )

I, Martin Sherman, being duly cautioned and sworn, state the following based on my personal knowledge:

1.      I am the president of M&S Advisory Group, Inc. ("M&S").

2.      M&S is an Ohio corporation in the business of providing retail consulting services.

3.      In my capacity as an officer and employee of M&S, I have been involved in advising a variety of retail businesses (particularly in developing and negotiating retail space in shopping centers and malls).

4.      In early 2002, EyeMart, which owns several retail optical stores, was interested in expanding its business and wished to do so by opening stores in shopping malls and centers throughout the country.  Through Michael Packard, another consultant, EyeMart sought out M&S' services to assist in this expansion.

5.    As a result of the contacts and negotiations with Douglas Barnes, the president of EyeMart's general partner ("Dr. Barnes"), M&S entered into a written Consulting Agreement effective February 1, 2002 with EyeMart (the "Agreement"). A copy of the Agreement was attached to the Complaint in this action as Exhibit A.

6.    I then began working on establishing awareness of M&S's relationship with EyeMart in the shopping centers industry. I also made contact with key developers on behalf of EyeMart to accomplish the strategic expansion plan.

7.    In the short few months in which M&S provided services to EyeMart, we were in the process of developing appropriate locations to respond to the plan of opening approximately fifteen new stores each year and renewing leases for existing locations. During that time period, I developed various opportunities to locate stores in the pre-determined strategic markets. These efforts included lease negotiations for the locations identified.

8.    Several of the market opportunities targeted and developed by my efforts were accepted by EyeMart and proceeded to the conclusion of lease agreements for the store locations. For example, I assisted EyeMart in locating and negotiating terms for locations in Ft. Wayne, Indiana; Lancaster, Pennsylvania; and York, Pennsylvania. In the short few months, I also consulted with EyeMart regarding and/or negotiated for possible locations in Montgomery, Alabama; Bakersfield and Palm Springs, California; Champaign, Illinois; Portland, Maine; Fargo, North Dakota; Harrisburg and Pittsburgh, Pennsylvania; Memphis, Tennessee and others. For various reasons, EyeMart decided not to proceed with those locations.

9.     In May 2002, I made plans to attend the 2002 Spring Convention of the International Council of Shopping Centers in Las Vegas, Nevada. I have attended this yearly convention every year since 1967. As part of my efforts on behalf of EyeMart, I arranged various meetings to continue to negotiate on behalf of EyeMart. For example, I scheduled meetings with Lance Johnson to discuss the negotiations for a location in York, Pennsylvania, with Monica Smith to discuss possible locations available in her portfolio, and with Joe Aristone to continue negotiations for a location in Harrisburg, Pennsylvania.

10.     Despite all my efforts on behalf of M&S to develop EyeMart's business strategy, EyeMart abruptly terminated the Agreement by letter dated May 23, 2002. A copy of the termination letter was attached as Exhibit B to the Complaint in this action.

11.     The termination notice gave no opportunity to cure, as required by the Agreement. When this defect was brought to EyeMart's attention, its counsel claimed that the reason for terminating the Agreement was my alleged inability to perform the Agreement competently.

12.     I believe EyeMart simply decided to use the valuable information that M&S had provided and then terminate the Agreement to attempt to cut M&S out of the consulting fees that were currently due and would accrue over the remainder of the initial term of the Agreement.

13.     Pursuant to the Agreement, EyeMart paid M&S $41,666.64 from February to May 1, 2002. Therefore, there remains an additional Three Hundred Fifty Eight Thousand Three Hundred Thirty Three Dollars and Thirty Six Cents ($358,333.36) of payments due under the Agreement. As of May 1, 2004, interest on this amount will

have accrued, at the statutory rate of 10 % per annum, in the amount of Sixty Two

Thousand Six Hundred Eighty Six Dollars and Six Cents ($62,686.06) for a total of  Four

Hundred Twenty One Thousand Nineteen Dollars and Twenty Six Cents ($421,019.26)

with additional interest thereon from May 1, 2004.

14.    In addition, EyeMart was to pay for reasonable expenses incurred by M&S

in performance of the Agreement.  In conjunction with the termination of the Agreement,

EyeMart also stopped payment of a check issued to M&S for reimbursement of an

earlier trip to Chicago, in the amount of One Thousand Four Hundred Eighteen Dollars

and Sixty Two Cents ($1,418.62).  As of May 1, 2004, interest on this amount will have

accrued, at the statutory rate of 10 % per annum, in the amount of Two Hundred

Seventy Seven Dollars and Fifty One Cents ($277.51) for a total of One Thousand Six

Hundred Ninety Six Dollars and Thirteen Cents ($1,696.13) with additional interest

thereon from May 1, 2004.

15.    As a result of EyeMart's breach of the Agreement, ignoring any damages

for additional fees which may have been earned under the Agreement, M&S has been

damaged in the amount of Four Hundred Twenty Two Thousand Seven Hundred

Fifteen Dollars and Thirty Nine Cents ($422,715.39)  with additional interest thereon

from May 1, 2004.

AFFIANT FURTHER SAYETH NAUGHT.

_____
Martin Sherman

Sworn to and subscribed before me by Martin Sherman this 15th day of March, 2004.

_____
Notary Public

DEBORAH A. TCHORZ
Notary Public, State of Ohio
My Comm. Expires April 19, 2006

My commission expires: _____

5

## CERTIFICATE OF SERVICE

I hereby certify that on March 15, 2004, I electronically filed the foregoing Affidavit of Martin Sherman in Support of Plaintiff's Motion for Summary Judgment with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following: Michael W. Hawkins and Jon B. Allison, Trial Attorneys for Defendant, Dinsmore & Shohl, 255 E. Fifth Street, Suite 1900, Cincinnati, Ohio 45202.

/s/ Robert A. Pitcairn, Jr.
Robert A. Pitcairn, Jr.