IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| **M&S ADVISORY GROUP, INC.** | : | Case No. C-1-02-522 |
| Plaintiff, | : | **PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANT'S** |
| v. | : | **MOTION TO COMPEL AND MOTION FOR SANCTIONS** |
| **EYEMART EXPRESS, LTD.** | : | |
| | | **Judge Spiegel** |
| Defendant. | : | **Magistrate Judge Hogan** |

I.  **INTRODUCTION**

Defendant, EyeMart Express, Ltd. ("EyeMart") filed its Motion to Compel upon the belief that Plaintiff, M&S Advisory Group, Inc. ("M&S"), failed to produce certain documents. Specifically, EyeMart seeks the production of certain lists that it believes existed at the time of its deposition of M&S's principal, Martin Sherman ("Mr. Sherman"). At its core, EyeMart's Motion to Compel is misguided. First, EyeMart seeks to compel production of documents that do not exist. Second, EyeMart mischaracterizes the alleged documents as something more than scribbled notes and requests a negative inference as a result of their absence. EyeMart's motion is without merit and should be denied.

II.  **ARGUMENT**

   A.  **M&S Cannot Produce That Which Does Not Exist**

EyeMart's Motion to Compel is premised on the assumption that M&S kept detailed lists and worksheets for each client with whom it worked. As a direct consequence of that assumption, EyeMart believes that M&S had in its possession, at the time of the Mr. Sherman's deposition, lists or worksheets specifically pertaining to

his work with EyeMart. As Mr. Sherman's deposition transcript reveals, however, these "lists" were nothing more than contemporaneous notes used in lieu of a calendaring system.

> Q: Do you have any calendaring system that you use to do that?
>
> A: To do what, sir?
>
> Q: To do follow-up.
>
> A: No. The follow-up – I would have a list on my desk which would say, "I am working on the following things." Okay? "I called Jonathan at such and such a day, talked about a location. I was supposed to get a letter of intent, and I haven't gotten it, and now it is a week later." I am going to follow up on that.
>
> Q: And this is the list you would create?
>
> A: I would create it along with my client.

Deposition of Martin Sherman, filed separately and incorporated herein by reference ("Sherman Deposition"), p. 54-55. It was only when Mr. Sherman realized that his jotted notes would be considered "lists" by counsel's use of that term that he, in the spirit of cooperation, agreed to EyeMart's request that such "lists" be produced. Affidavit of Martin Sherman which is attached hereto as Exhibit A ("Sherman Affidavit"), ¶¶4-6.

Upon returning to his office, Mr. Sherman discovered that his "lists", as is often the case with such notes, had been discarded and could not be found. Sherman Affidavit, ¶7. In sum, the "lists" did not exist on the day of the deposition, and they do not exist now. Since the "lists" do not exist, they cannot be produced. M&S advised EyeMart of this fact in response to EyeMart's request for production and in correspondence to EyeMart's counsel. See, Exhibits E and F to the Motion to Compel. This is a reality to which even EyeMart acquiesces. Plaintiff's Motion to Compel, pg. 5.

### B.     A Jury Instruction of Adverse Inference is Unwarranted

EyeMart's continued insistence that Mr. Sherman's "lists" existed on the day of the deposition is unsupported. Any alleged acknowledgement on the part of Mr. Sherman during his deposition was a good faith assumption. Sherman Affidavit, ¶4. At best, these notes may have existed at some point during the relationship between EyeMart and M&S. Certainly, there is no evidence that Mr. Sherman or any agent of M&S destroyed any such "lists" post-deposition. Sherman Affidavit, ¶8.

In any event, it is quite clear from Mr. Sherman's deposition testimony that EyeMart's characterization of these "lists" as being something more than scribbled notes is self-conjured. In fact, when EyeMart's counsel raised the issue, in the deposition, Mr. Sherman was puzzled by the characterization.

> Q:   And did you produce this EyeMart list to your attorneys?
>
> A:   What list are you talking about, sir?
>
> Q:   The list you said you would keep on your desk of what you were working on for EyeMart.
>
> A:   It would be a day-to-day thing. I mean, I'm not so sure other than – geez, I have got tablets like that. That is my list. I mean, I don't have a sophisticated list. I have a list, a worksheet that I work with every day of people that I know I have work in process.

Sherman Deposition, p. 56; Sherman Affidavit, ¶ 4.

Rather than anything substantive, these "lists" are in fact the sort of throw-away reminders a person might use through the course of a given day. For example, Mr. Sherman would retrieve messages from his answering machine and write down the name and number of the person to call. Likewise, during a phone conversation, he might note the name and number of a person to return a call. These types of notes were generally kept on a paper tablet until it was used up or the calls listed were

returned. Sherman Affidavit, ¶1. Without question, what EyeMart seeks may or may not have existed but, at most, these "lists" were nothing more than a name and an accompanying phone number. Sherman Affidavit, ¶5. Mr. Sherman confirmed as much in his deposition:

> A. ... If someone calls and I am not able to take the call, at the end of the day there may be 12 calls, and we will have a record of calls because I call everybody back.
>
> Q. And where are those records?
>
> A. Oh, they usually come on little slips of paper that you throw away, I guess. Little telephone - -
>
> Q. So you don't retain any of those?
>
> A. I have some that - - if I went through the sheets that you can go through. The purpose of them only is to say, you know, Jonathan called, you know, at 3:30 in the afternoon. Call him back.

Sherman Deposition, pp. 78-79. Certainly, no substantive notes were kept on these "lists". Sherman Affidavit, ¶1. To characterize the "lists" any other way would not comport with the testimony or the evidence. Sherman Affidavit, ¶2.

Given there is no direct evidence that information relating to EyeMart was even on these "lists", M&S need not address issues of any adverse inference arising from missing evidence and the resulting spoliation of the same. Nonetheless, it should be noted that none of the cases cited in EyeMart's Motion to Compel apply here. Indeed, every case EyeMart cites features the <u>willful</u> destruction of evidence. As this memorandum points out, no evidence was destroyed or discarded to disrupt or hinder EyeMart's case. Thus, any claim of intentional interference with civil litigation or spoliation of evidence is unsupported.

As EyeMart notes, a claim of spoliation requires a showing of "willful destruction

of evidence", "disruption of the defendant's case" and "damages proximately caused by the plaintiff's acts." Smith v. Howard Johnson Co., Inc., 615 N.E.2d 1037, 1038 (Ohio 1994). EyeMart has not offered a single piece of evidence to meet any of these elements. While it is true that M&S quickly determined to pursue its legal remedies for EyeMart's breach of the parties' agreement, there is no evidence that the "lists", if they existed, were still in existence at the time of the breach. More importantly, the fact that, if such "lists" did exist, they no longer exist is not sufficient to prove the other elements needed for a claim of spoliation.

Even assuming the "lists" existed and were thrown away, there is no evidence that this was to willfully destroy them. Rather, the only evidence is that it would have been part of the ordinary course for such jotted notes to be discarded once their purpose was fulfilled. Sherman Deposition, p. 78. Likewise, EyeMart cannot establish that anything in the evidence sought disrupted the case or caused any damage to it. Certainly, M&S has produced multiple files relating to the contracts and negotiations it conducted on behalf of EyeMart and provided additional notes regarding these discussions orally at the time of the work being done and in a memorandum upon termination of the Agreement. See, Sherman Deposition pp. 124-125, 128-129, 157, Exhibit 15.

In fact, but for the stray remarks in Mr. Sherman's deposition, there would be no consideration of this issue. In a similar context, an Ohio court of appeals has agreed that sanctions are unwarranted where there was no substantial evidence of spoliation other than a comment during a deposition:

> Non-existent evidence, by its very nature, cannot be spoiled. See *Pratt v. Payne*, 153 Ohio App.3d 450, 2003 Ohio 3777. at P21. Rather, sanctions


> and causes of action for spoliation of evidence are designed to place responsibility and accountability on parties who were actually in possession of evidence that existed at one time but who later do not provide this evidence and do not provide an adequate explanation for failing to do so. See *Hubbard v. Cleveland, Columbus, & Cincinnati Hwy, Inc. (1947), 81 Ohio App. 445, 451, 50 Ohio Law Abs. 78, 76 N.E.2d 721.* Given the aforementioned evidence before the trial court, it did not abuse its discretion in refusing to provide the instructions regarding spoliation requested by Keen. Furthermore, no evidence was provided that Dr. Romig and Hardin Memorial were guilty of any wrongdoing or misconduct by intentionally disposing of the dictation. Without any evidence of the dictation's existence or of malfeasance on the part of the defendants, the trial court did not err in failing to give the requested instructions.

Keen v. Hardin Memorial Hospital, No. 6-03-08, 2003 Ohio App. Lexis 6076, **11-12 (December 15, 2003)(copy attached)  Likewise, here, there is no evidence of the existence of these "lists" as they have been characterized by EyeMart other than vague references in Mr. Sherman's deposition. Certainly, no malfeasance can be shown. As such, any negative influence is unwarranted and prejudicial.

    **C.**    **EyeMart is Not Entitled to a Fee Award or Sanctions**

As to the matter of EyeMart's request for payment of its expenses, the Court should not order such payment even if EyeMart should prevail on its motion. EyeMart bases its request on Rule 37 of the Federal Rules of Civil Procedure. First, the rule only applies to failure to produce or unfounded objections. Therefore, fees are only to be awarded if disclosure is ordered. EyeMart's statement in the Motion to Compel that "to date, the documents have not been produced", while accurate, is misleading given its implication that documents are being withheld. M&S made clear to counsel that the reason no documents were produced in response to the request is that no responsive documents existed. See, Exhibits F and H to Motion to Compel. Therefore, this motion to compel was unnecessary as there was nothing to compel and EyeMart and its counsel were perfectly aware of that.

Moreover, a court should not order payment if "the opposing party's nondisclosure, response, or objection was <u>substantially justified</u>." (See Fed. R. Civ. P. 37(a)(4) Advisory Committee Notes to 1970 Amendments). According to the Supreme Court, the substantial justification standard requires only that reasonable lawyers could disagree about the appropriateness of the disputed position. <u>Pierce v. Underwood</u>, 487 U.S. 552 (1988). At a minimum, the case at bar is one upon which reasonable attorneys could disagree.

### III.   **CONCLUSION**

Plaintiff M&S Advisory Group respectfully requests that this Court deny Defendant EyeMart Express, Ltd.'s Motion to Compel Discovery and all accompanying requests for orders as part of Defendant's Motion to Compel.

/s/ Robert A. Pitcairn, Jr.
Robert A. Pitcairn, Jr. (0010293)
Trial Attorney for Plaintiff
255 East Fifth Street, Suite 2400
Cincinnati, Ohio 45202-4787
(513) 977-3477 – telephone
(513) 721-7120 – facsimile
rpitcairn@katzteller.com – e-mail

OF COUNSEL:

Wijdan Jreisat
Katz, Teller, Brant & Hild
255 East Fifth Street, Suite 2400
Cincinnati, Ohio 45202-4787
(513) 721-4532

**CERTIFICATE OF SERVICE**

I hereby certify that on March 17, 2004, I electronically filed the foregoing Plaintiff's Memorandum in Opposition to Defendant's Motion to Compel and Motion for Sanctions with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following: Michael W. Hawkins and Jon B. Allison, Trial Attorneys for Defendant, Dinsmore & Shohl, 255 E. Fifth Street, Suite 1900, Cincinnati, Ohio 45202.

/s/ Robert A. Pitcairn, Jr.
Robert A. Pitcairn, Jr.