<div align="right">
Michael W. Hawkins (0012707)<br>
Jon B. Allison (0073955)<br>
Attorneys for Defendant EyeMart Express, Ltd.
</div>

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

| | | |
|---|---|---|
| M&S ADVISORY GROUP, INC., | : | Case No. C-1-02-522 |
| | : | |
| Plaintiff, | : | Judge Spiegel |
| | : | Magistrate Judge Hogan |
| vs. | : | |
| | : | **EYEMART EXPRESS LTD.'S** |
| EYEMART EXPRESS, LTD., | : | **MOTION FOR LEAVE TO AMEND** |
| | : | **ITS COUNTERCLAIM PURSUANT** |
| Defendant. | : | **TO RULE 15 OF THE FEDERAL** |
| | | **RULES OF CIVIL PROCEDURE** |

Pursuant to Fed. R. Civ. P. 15, EyeMart Express Ltd. ("EyeMart") moves this Court for an Order granting it leave to amend and file an Amended Counterclaim to allege fraud based on facts newly-discovered through the discovery process. As set forth in the attached Memorandum in Support, this Motion is made for the reason that newly-discovered evidence requires that leave be freely granted so that EyeMart may allege an additional claim based on facts that were not known at the time of the commencement of this action.

<div style="margin-left: 50%;">
Respectfully submitted,

/s/ Michael W. Hawkins
Michael W. Hawkins (0012707)
Jon B. Allison (0073955)
DINSMORE & SHOHL, LLP
1900 Chemed Center
255 East Fifth Street
Cincinnati, Ohio 45202
513/977-8200 (Phone)
513/977-8141 (Fax)

Trial Attorneys for Defendant,
EyeMart Express, Ltd.
</div>

**CERTIFICATE OF SERVICE**

I hereby certify that on March 26, 2004, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

Robert A. Pitcairn, Jr., Esq.
Wijdan Jreisat, Esq.
Katz, Teller, Brant & Hild
255 East Fifth Street
Suite 2400
Cincinnati, Ohio 45202-4787

<u>/s/ Jon B. Allison</u>
Jon B. Allison (0073955)

998994v1

**MEMORANDUM IN SUPPORT**

I.  **INTRODUCTION**

EyeMart Express, Ltd. ("EyeMart") is in the retail optical eyewear business and maintains approximately sixty-five stores across the country. Toward the end of 2001 and the beginning of 2002, EyeMart began to consider growing its business (adding store locations around the country) more quickly than it had in the past. EyeMart interviewed Martin Sherman, the owner and lone consultant of M&S Advisory Group, Inc. ("M&S"), among others. During January of 2002, EyeMart and Sherman engaged in multiple conversations regarding EyeMart's strategic plan for growth and a possible consulting arrangement. Sherman made many representations and promises during these conversations regarding what he would do for EyeMart as a consultant.

Sherman promised that he would (1) fully negotiate leases for EyeMart, (2) enable it to open twelve to eighteen store locations within the first year of the Consulting Agreement, (3) obtain better lease rates than EyeMart otherwise could due to his reputation in the real estate development industry and his personal relationships with others in the industry, (4) get EyeMart into locations it otherwise could not get into, (5) travel to scout out locations for EyeMart, (6) provide sales numbers of LensCrafters locations in certain areas to assist EyeMart in selecting locations that would be the most profitable, and (7) devote the time necessary to ensure that EyeMart achieved its goals, including the goal of opening twelve to eighteen store locations within the first year of the Agreement.

During these conversations, Sherman also told EyeMart that it needed to attend the International Council of Shopping Centers ("ICSC") convention in Las Vegas in May of 2002. Sherman told EyeMart this would be the best opportunity to meet many of the major players in the real estate development industry and he promised to arrange for meetings between EyeMart

3

and many of the major players in the industry.

In reliance upon these representations and promises, on February 1, 2002, EyeMart and M&S entered into a Consulting Agreement under which M&S, through Martin Sherman, was to act as EyeMart's exclusive leasing agent and provide consulting services to EyeMart. After several months of non-performance by M&S, EyeMart terminated the Agreement.

M&S filed the Complaint in state court on June 13, 2002 asserting breach of contract by EyeMart, claiming that EyeMart had not terminated the Agreement appropriately. EyeMart removed the case to this Court and filed its Answer to the Complaint on December 13, 2002. EyeMart filed a Counterclaim on March 6, 2003 and an Amended Counterclaim on July 14, 2003 asserting causes of action for breach of contract and promissory estoppel.

## II.    FACTUAL BACKGROUND

The discovery cut-off in this case was February 25, 2004. Both M&S and EyeMart conducted depositions in the weeks immediately preceding the discovery cut-off date. During discovery, particularly during the weeks immediately preceding the discovery cut-off, EyeMart discovered facts which support a claim of fraud under Ohio law.

For example, as set forth above, Sherman told EyeMart, both before and after the execution of the Agreement, that it needed to attend the ICSC convention in Las Vegas in May of 2002 because Sherman would arrange for many meetings for EyeMart with major players in the real estate development industry in an effort to implement EyeMart's strategic plan. Sherman said this was the best opportunity for EyeMart to establish relationships with these people.

Through discovery, EyeMart learned that Crabtree & Evelyn, Sherman's other client that attended the May 2002 convention, had arranged with Sherman to spend the entire convention in meetings with Sherman for Crabtree & Evelyn. In fact, for several years prior to 2002, representatives from Crabtree & Evelyn worked closely with Sherman each year to set the

4

schedule for the annual convention in Las Vegas. The general practice was for Sherman to spend nearly the entire Las Vegas convention with representatives from Crabtree & Evelyn in meetings for Crabtree & Evelyn. Crabtree & Evelyn was not even aware that EyeMart would be attending the May 2002 convention.

EyeMart was expected to pay half of Sherman's expenses for the convention. When EyeMart arrived at the convention, however, it was informed that Sherman had not arranged for any meetings for EyeMart with anyone. It is clear to conclude, therefore, that Sherman never intended to perform much, if any, service for EyeMart at the convention.

Through the discovery process, EyeMart also confirmed that Sherman had failed to take any action whatsoever to pursue certain priority locations EyeMart wanted to pursue for new stores. Sherman had been made aware that he was to pursue these locations repeatedly both orally and in writing. Still, as the months passed, he took no action. It is clear to conclude that Sherman never intended to perform certain consulting services for EyeMart, including pursuing certain locations EyeMart wished to pursue.

Given Sherman's failure to take action on behalf of EyeMart to pursue locations for new stores, and given Sherman's actions at the convention in Las Vegas, where he arranged to spend the entire convention with his other client, Crabtree & Evelyn, it is clear to conclude that Sherman never intended to provide the consulting services he agreed to provide in the Agreement.

**III.    ARGUMENT**

Under Ohio law, the elements of fraud are: (1) a representation or, where there is a duty to disclose, concealment of a fact; (2) which is material to the transaction at hand; (3) made falsely, with knowledge of its falsity, or with such utter disregard and recklessness as to whether

it is true or false that knowledge may be inferred; (4) with the intent of misleading another into relying upon it; (5) justifiable reliance upon the representation or concealment; and (6) a resulting injury proximately caused by the reliance.  See Burr v. Board of County Commissioners of Stark County, 491 N.E.2d 1101, 1105 (Ohio 1986).  The facts discovered by EyeMart in the discovery process support a claim of fraud in this matter.

Fed. R. Civ. P. 15(a) provides that leave to amend a complaint or counterclaim "shall be freely given when justice so requires."  The Sixth Circuit has recognized that Rule 15(a) embodies a "liberal policy of permitting amendments to ensure the determination of claims on their merits."  General Electric Co. v. Sargent & Lundy, 916 F.2d 1119, 1130 (6th Cir. 1990); See also Janikowski v. Bendix Corp., 823 F.2d 945, 951 (6th Cir. 1987) ("the case law in this circuit manifests 'liberality in allowing amendments to a complaint'").  In this case, granting leave to amend is appropriate so that the pleadings conform with the recently-discovered evidence.

The strong policy in favor of liberally permitting amendments to its Amended Counterclaim is also manifested in Fed. R. Civ. P. 15(b), which would allow EyeMart to amend its Amended Counterclaim *at trial* in order to effect conformity with the actual evidence presented, even if the Counterclaim were not amended now.

## IV.  CONCLUSION

For the foregoing reasons, EyeMart respectfully requests this Court issue an Order granting it leave to amend its Amended Counterclaim.

Respectfully submitted,

/s/ Michael W. Hawkins
Michael W. Hawkins (0012707)
Jon B. Allison (0073955)
DINSMORE & SHOHL, LLP
1900 Chemed Center
255 East Fifth Street
Cincinnati, Ohio  45202
513/977-8200 (Phone)
513/977-8141 (Fax)

Trial Attorneys for Defendant,
EyeMart Express, Ltd.

## CERTIFICATE OF SERVICE

I hereby certify that on March 26, 2004, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following:

Robert A. Pitcairn, Jr., Esq.
Wijdan Jreisat, Esq.
Katz, Teller, Brant & Hild
255 East Fifth Street
Suite 2400
Cincinnati, Ohio 45202-4787

/s/ Jon B. Allison
Jon B.  Allison (0073955)

998994v1