UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| **M&S ADVISORY GROUP, INC.** | : | Case No. C-1-02-522 |
| Plaintiff, | : | **PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANT'S** |
| v. | : | **MOTION FOR SUMMARY JUDGMENT** |
| **EYEMART EXPRESS, LTD.,** | : | |
| | | **Judge Spiegel** |
| Defendant. | : | **Magistrate Judge Hogan** |

## I. INTRODUCTION

Plaintiff M&S Advisory Group, Inc., ("M&S") and Defendant EyeMart Express, Ltd. ("EyeMart") have both moved for summary judgment in this matter. Nonetheless "[t]he Court must evaluate each party's motion on its own merits, taking care in such instance to draw all reasonable inferences against the party whose motion is under consideration." Taft Broadcasting Co. v. United States, 929 F.2d 240, 248 (6th Cir. 1991); Westfield Ins. Co. v. Tech Dry, Inc., 336 F.3d 503, 506 (6th Cir. 2003). A review of both motions demonstrates that M&S is entitled to summary judgment on its motion as it only requires resolution of legal issues based on the undisputed evidence. EyeMart's motion, on the other hand, must be denied as it is barred by the genuine dispute of facts material to its allegations.

To avoid duplication, M&S refers the Court to the recitation of established facts set forth in the memorandum filed in support of Plaintiff's Motion for Summary Judgment and incorporates that section fully by reference herein. As that memorandum establishes, the parties to this action entered into a written Consulting Agreement dated February 1, 2002 (the "Agreement"), M&S proceeded to perform under that Agreement

1

and EyeMart then unilaterally terminated the Agreement without observing the requirements for termination set forth in it.

In its counterclaim, EyeMart has made two claims based on the same facts – a breach of contract claim and a promissory estoppel claim. It has moved for summary judgment as to both claims. To establish its breach of contract, EyeMart must establish that the "duties" it asserts were agreed upon and that they were not performed by M&S. Both these preliminary factual determinations are disputed. Moreover, EyeMart does not provide any evidence to support any damages supposedly incurred due to these alleged breaches. Likewise, EyeMart must establish, without dispute, that particular promises were allegedly made and broken by M&S. Again, there are genuine disputes of fact as to the existence of such promises and the alleged failures of their performance and, again, there is no mention of any alleged damages suffered as a result. Therefore, EyeMart's motion should be denied.

## II.    **BREACH OF CONTRACT**

EyeMart claims various "breaches" by M&S based on the alleged representations of Martin Sherman, M&S's principal, before entering into the Agreement. Interestingly enough, despite the fact that EyeMart is clearly an experienced and sophisticated business, it did not set forth any of these alleged duties in the Consulting Agreement. EyeMart negotiated the terms of that Agreement. Deposition of Jonathan Herskovitz filed separately and incorporated herein by reference, ("Herskovitz Deposition"), pp.18-20. Nonetheless, it did not include any of the specific tasks it now claims were fundamental to the Agreement (i.e. opening a certain number of stores in particular

locations within a specified time period) in the written Agreement. Rather, the Agreement provided that:

> EyeMart will retain Consultant [M&S] on matters relating to the strategy of selecting retail store locations, implementation of the strategy, and lease negotiations. Consultant will act as EyeMart's exclusive leasing agent for all locations. Consultant shall make Martin Sherman available at mutually agreed times and locations for such consultation and assistance as requested . . . The parties anticipate that Martin Sherman will attend meetings at EyeMart headquarters as necessary for the purpose of discussion of lease negotiations and ongoing site selection strategy.

Had the specific tasks identified by EyeMart been so material, it had an easy way to insure their inclusion in the parties' agreement – it could have so specified in the Agreement. It did not do so.

EyeMart cannot vary the duties required by the Agreement by its claims that the parties' agreement included other specific duties – this is precisely what the parol evidence rule forbids. The Ohio Supreme Court has explained that rule as follows: "'absent fraud, mistake, or other invalidating cause, the parties' final written integration of their agreement may not be varied, contradicted or supplemented by evidence of prior or contemporaneous oral agreements, or prior written agreements'." Galmish v. Cicchini, 90 Ohio St. 3d 22, 27, 734 N.E. 2d 782, 788 (2000)(citation omitted)[1]. The rule is a matter of substantive law when applied to contracts and precludes the sort of extrinsic evidence sought to be introduced by EyeMart:

> Extrinsic evidence is excluded because it cannot serve to prove what the agreement was, this being determined as a matter of law to be the writing itself. The rule comes into operation when there is a single and final memorial of the understanding of the parties. When that takes place, prior and contemporaneous negotiations, oral or written, are excluded; or, as it

---

[1] Because this court is sitting in diversity, the law of the forum state applies. Westfield Ins. Co. v. Tech Dry, Inc. 336 F.3d 503, 506 (6th Cir. 2003)

>is sometimes said, the written memorial supersedes these prior or contemporaneous negotiations.

Galmish, 90 Ohio St. 3d at 27, 734 N.E. 2d at 789 (citation omitted).

To avoid any question as to the terms agreed upon in the Agreement, the parties specifically acknowledged that any such extrinsic claims, agreements or promises could not revise their agreement by including a merger clause that specified that the Agreement set forth "the entire Agreement" between them, "supersedes any and all other agreements, either oral or written" between them and could "not be modified orally" but only through a "writing and signed by EyeMart, Martin Sherman and Consultant." Generally, "a written contract will be presumed to be a complete 'integration' of the parties' agreement. This presumption is strongest where a written agreement contains a merger or integration clause expressly indicating that the agreement constitutes the parties' complete and final understanding regarding its subject matter." Fontbank, Inc. v. Compuserve, Inc., 138 Ohio App.3d 801, 808, 742 N.E.2d 674, 678-679 (2000)(confirming that the parol evidence rule prohibits the plaintiff from presenting any evidence to support its claims for breach of contract and promissory estoppel where the agreement involved included a merger clause).

Therefore, EyeMart cannot now seek to change the terms of the parties' agreement by alleged duties which are not specifically set forth therein. To the extent it claims that M&S was required to open a certain number of stores in a certain time frame or was required to arrange meetings at a specific convention and that any such failures were in breach of the Agreement, it is precluded from adding these additional "duties" when the Agreement does not specifically include them. More importantly, there is a clear dispute of material facts in this regard.

EyeMart's claims that M&S failed to perform as required by the Agreement are simply unsupported.  Several of the market opportunities targeted and developed by M&S's efforts were accepted by EyeMart and proceeded to the conclusion of lease agreements for the store locations.  For example, M&S assisted EyeMart in locating and negotiating terms for locations in Ft. Wayne, Indiana; Lancaster, Pennsylvania; and York, Pennsylvania.  In the short few months before termination of the Agreement, M&S also consulted with EyeMart regarding and/or negotiated for possible locations in Montgomery, Alabama;  Bakersfield and Palm Springs, California;  Champaign, Illinois;  Portland, Maine;  Fargo, North Dakota;  Harrisburg and Pittsburgh, Pennsylvania;  Memphis, Tennessee and others.  For various reasons, EyeMart decided not to proceed with those locations.  Affidavit of Martin Sherman in Support of Motion for Summary Judgment filed separately and incorporated herein by reference ("Sherman Affidavit"), ¶8.

The testimony of developers contacted by M&S shows the value of having M&S as a consultant.   According to EyeMart's motion, one of its top priorities for a new store was York, Pennsylvania.  EyeMart faulted M&S for failing to immediately consummate a lease at the York Galleria mall when several spaces appeared to be vacant.  Deposition of Frederick Grubb filed separately and incorporated herein by reference ("Grubb Deposition"), p. 27.  This sort of thinking is indicative of why EyeMart needed a consultant.  As the mall representative, Lance Johnson, testified, there were two other optical stores already located in that mall and he had concerns about leasing to a third optical store tenant.  Deposition of Lance Johnson filed separately and incorporated

herein by reference ("Johnson Deposition"), p. 9.  In fact, but for the association with Mr. Sherman, that mall may not have leased space to EyeMart.  Johnson Deposition, p. 10.

Likewise, M&S's involvement allowed a more efficient negotiation process as developers were familiar with Mr. Sherman and his reputation.  As such, they knew they couldn't "pull the wool over his eyes" and were willing and able to negotiate the right deal quickly with his involvement.  Deposition of Monica Smith filed separately and incorporated herein by reference ("Smith Deposition"), p. 20.   Of course, this expertise is why EyeMart hired Mr. Sherman.  Herskovitz Deposition, p.14.  Ironically, it appears that EyeMart overlooked this expertise and assumed that Mr. Sherman was doing very little for them.  Herskovitz Deposition, p.198.[2]

Had EyeMart been concerned that M&S was not performing as anticipated by the Agreement, its remedy was available under that same Agreement.  It could have provided notice and an opportunity to cure.  EyeMart cannot now seek to recover damages without having exercised the remedy available under the Agreement.  According to EyeMart, "Dr. Barnes [EyeMart's principal] instructed [Jonathan] Herskovitz [EyeMart's primary contact with M&S] to begin sending Sherman written notices of Sherman's nonperformance and of what EyeMart wanted accomplished in case the Agreement had to be terminated due to Sherman's failure to perform."  Defendant EyeMart Express Ltd.'s Motion for Summary Judgment, p.10.  EyeMart claims that it provided four written notices to that effect.  Id.

According to EyeMart, four memoranda submitted by EyeMart to Mr. Sherman, Defendant's Exhibits 6, 9, 10 and 12, constituted the notice of default required by the

---

[2]  Nonetheless, EyeMart acknowledged that M&S had taken some action as to approximately sixteen locations during the short few months in which the Agreement was in effect.  Id.

Agreement.  Defendant EyeMart Express Ltd.'s Motion for Summary Judgment, p. 10. A review of these memoranda shows them to be what they claim to be – mere status updates.   Exhibit 6 is a memorandum from Mr. Herskovitz to Mr. Sherman.  The reference line reads simply "Doug Barnes Wish List."  As that title indicates, the memo then states "Here's our wish list" and sets forth various locations.  Exhibit 9 is another memorandum from Mr. Herskovitz to Mr. Sherman which reads "Here is my status update" and proceeds to list the status of various locations.  Some locations read "waiting on Marty to . . .".  This memorandum also includes notes such as "need to determine where in city we need to go", "lease being reviewed by attorney", etc.  In fact, the memorandum ends with a peppy "Hope you are having a great day.  Talk to you soon." Exhibit 10 is another memorandum from Mr. Herskovitz addressed to not only Mr. Sherman but to Doug Barnes and Rick Grubb of EyeMart.  Again, the memorandum states "Attached is the new and improved Future Location Status Report.  I will update you regularly.  Please let me know if you have any revisions or updates.  Make it a profitable day  . . . "  A review of the status notes indicates that Mr. Sherman is in the process of working on several matters while other matters await action by Mr. Herskovitz or Dr. Barnes. Exhibit 12 is an updated version of Exhibit 10 again addressed to Mr. Sherman, Mr. Grubb and Dr. Barnes.

      That EyeMart is now claiming these memoranda were the default notices required by the Agreement is disingenuous at best and desperate at worst.   They were clearly simple progress reports.  There is no mention that the status of any particular location is delayed or problematic to EyeMart.  In fact, these status memoranda are also addressed to Mr. Grubb and Dr. Barnes.  Is EyeMart claiming they were also delinquent

in their duties? As EyeMart acknowledged, none of these memoranda explained that, based on the status to date, EyeMart might consider terminating the Agreement:

> Q. What I asked is: Did any of the memos that are Exhibits 2, 5 through 15 - - and then 5 through 15 state that EyeMart might terminate the Consulting Agreement?
> A. No.
> Q. (By Ms. Jreisat) Did any other memos or letters or any written correspondence with M&S state that EyeMart might terminate the Consulting Agreement before EyeMart actually terminated the agreement?
> A. Again, I'm not trying to be difficult, but, you know, I think I know that's what these notifications were intended to do and what they did.
> Q. My question was: Did it actually state that?
> A. No.

Herskovitz Deposition, pp. 116-117. Likewise, none of these memoranda provided a time frame to perform any of the tasks involved:

> Q. . . . was there any specific deadline that was ever stated in any written documentation to M&S for performance of any of its tasks?
> A. Can you ask that question again?
> A. I'm reviewing. Sorry (Pause). No.

Herskovitz Deposition, p. 118. In fact, none of these memoranda even mentioned the Consulting Agreement:

> Q. Did any of that - - of the written correspondence to M&S specifically mention the Consulting Agreement?
> A. Toward the end of the relationship, I mean, there was a letter sent that mentioned the Consulting Agreement, I believe.
> Q. Which letter was that?
> A. The termination letter - - Yeah, the termination letter.
> Q. Other than the termination letter, did any of the written correspondence to M&S specifically mention the Consulting Agreement?
> A. No.

Herskovitz Deposition, p.118.

Quite simply, the status memoranda provided by EyeMart to M&S are legally insufficient to constitute the notice of default required by the Agreement. They do not specify the defaults claimed, they do not assert that the status or delays in these locations are defaults, they do not invoke the Agreement, they do not provide a time period to cure. In short, it is ludicrous for EyeMart to claim that these status updates should have put M&S on notice of alleged defaults under the Agreement.

Likewise, EyeMart's claim that M&S failed to schedule meetings at the ICSC Convention is equally without factual or legal support. EyeMart continues to claim that no such meetings were scheduled despite the evidence provided by Mr. Sherman as to the meetings scheduled. Sherman Affidavit, ¶9. This evidence was corroborated by the independent testimony of Monica Smith, Lance Johnson and Joseph Aristone (representatives of various developers) that they had scheduled meetings at the ICSC Convention with Mr. Sherman prior to that convention. Smith Deposition, p. 13; Johnson Deposition, p. 12; Deposition of Joseph Aristone filed separately and incorporated herein by reference ("Aristone Deposition"), p. 9.

Even if EyeMart could have proven that no meetings had been scheduled and that this was material to the Agreement, had M&S been given the appropriate notice, it could have cured whatever defaults were alleged. After all, these were simply meetings with developers. There was no magic to the ICSC Convention, only that it was a convenient time to schedule multiple meetings in one location. Had EyeMart wanted to, it could have set up other meetings with any of those developers. Deposition of Douglas Barnes filed separately and incorporated herein by reference ("Barnes Deposition"), p. 118.

EyeMart's claim that Mr. Sherman indicated he wanted to terminate the Agreement is yet another red herring tossed out in a desperate attempt to distract from the breach of the Agreement by EyeMart.  Setting aside the fact that the Agreement required any modification to be in writing, the facts clearly establish that neither party took any such discussion seriously as they proceeded with the work of the Agreement thereafter.

Finally, EyeMart cannot establish any damages suffered from the alleged breach of contract.  In fact, in its motion, it fails to set forth any such damages other than a generic reference that "Sherman's breaches caused damages to EyeMart in the form of compensation to Sherman, compensation to additional personnel hired, monies spent on construction of additions and upgrades to EyeMart's headquarters, travel expenses, and in time spent by EyeMart employees performing tasks Sherman failed to and was paid to perform."  Defendant EyeMart Express, Ltd.'s Motion for Summary Judgment, p. 20.  No amount is set forth and no reasonable basis to establish such damages or tie them to any action by M&S is even attempted.  It is clear that EyeMart has not met the burdens of a moving party to justify summary judgment on its breach of contract claim.

### III.     PROMISSORY ESTOPPEL

EyeMart also seeks judgment on it promissory estoppel claim against M&S. EyeMart claims M&S made promises regarding what he would do for EyeMart. Defendant EyeMart Express Ltd.'s Motion for Summary Judgment, p. 4.  Specifically, EyeMart claims M&S promised to:

> (1) fully negotiate leases for EyeMart, (2) enable it to open twelve to eighteen store locations within the first year of the Consulting Agreement,

>(3) obtain better lease rates than EyeMart otherwise could due to his reputation in the real estate development industry and his personal relationships with others in the industry, (4) get EyeMart into locations it otherwise could not get into, (5) travel to scout out locations for EyeMart, (6) provide sales numbers of LensCrafters locations (which he had from his days working with LensCrafters) to assist EyeMart in selecting locations that would be the most profitable, and (7) devote the time necessary to ensure that EyeMart achieved its goals, including the goal of opening twelve to eighteen store locations within the first year of the Agreement.

Id. EyeMart asserts its reliance on these representations. As set forth above, the evidence contradicts EyeMart's claims. At the very least, there are genuine disputes as to material facts which preclude EyeMart's claims.

Even if these allegations are to be believed, EyeMart cannot seek to avoid the strictures of the Agreement and the parol evidence rule by re-casting its breach of contract claim as a promissory estoppel claim. Again, EyeMart had a simple way to require compliance with the representations claimed to have been made by M&S. It could easily have specified these detailed requirements in the Agreement. In fact, no such requirements were specified. Whether as a claim of breach or a claim of promissory estoppel, EyeMart will be precluded from introducing evidence of these alleged representations by the parol evidence rule.

The promises on which EyeMart seeks to rely were allegedly made prior to or contemporaneously with the Agreement. Having failed to include these specifics in the Agreement or to provide notice to M&S of its expectation that these specifics be performed, EyeMart cannot now seek to impose liability by other means by claiming promissory reliance on these alleged representations. Ohio courts have held that the parol evidence rule prohibits such claims. Ed Schory & Sons, Inc v. Soc. Natl. Bank, 75 Ohio St.3d 433, 440, 662 N.E.2d 1074, 1080 (1996) (holding that parol evidence rule

precluded promissory estoppel claim where there was a clear written agreement between the parties); Kashif v. Cent. State Univ., 133 Ohio App.3d 678, 684, 729 N.E.2d 787, 791 (1999)(upholding the trial court's determination that the plaintiff could not invoke promissory estoppel to contradict the provisions of the written agreement); Fontbank, Inc.( parol evidence rule prohibits presentation of any evidence to support claim for promissory estoppel).

Moreover, it is well settled under Ohio law that "a breach of contract does not create a tort claim." Textron Fin. Corp. v. Nationwide Mut. Ins. Co. 115 Ohio App. 3d 137, 151, 684 N.E.2d 1261,1270 (1996), *discretionary appeal not allowed*, 78 Ohio St. 3d 1425, 676 N.E. 2d 531 (1997). There is an "unbroken line of authority in Ohio that a breach of contract does not create a tort claim, regardless of the motive of the promisor…." Battista v. Lebanon Trotting Assn., 538 F.2d 111, 118 (6th Cir. 1976). Thus, "the existence of a contract action generally excludes the opportunity to present the same case as a tort claim." Wolfe v. Continental Cas. Co., 647 F.2d 705, 710(6th Cir. 1981)(construing Ohio law). EyeMart's promissory estoppel claim is merely an attempt to fabricate a tort out of a contract claim.

As the Court will note from EyeMart's motion, the "promises" alleged to have been made by M&S all relate to the work that M&S was to perform pursuant to the Agreement and are identical to the allegations of breach asserted as part of the breach of contract claim. Defendant EyeMart Express Ltd.'s Motion for Summary Judgment, p. 18. It is axiomatic that a tort claim is premised on some duty owed by the tortfeasor to the claimant. Here, the only "duty" that M&S allegedly breached was its contractual duty to perform the Agreement. Ohio courts have rejected such a basis for a tort claim

and have uniformly held that a cause of action in tort must be supported by a breach of a legal, not a contractual, duty.  As the courts have explained, "'[t]ort law is not designed, however, to compensate parties for losses suffered as a result of a breach of duties assumed only by agreement.'" Floor Craft Floor Covering, Inc. v. Parma Community Gen. Hosp. Assn., 54 Ohio St.3d 1, 7, 560 N.E.2d 206, 211 (1990)(quoting Sesenbrenner v. Rust, Orling & Neale, 236 Va. 419, 425, 374 S.E.2d 55, 58(1988)).

Therefore, EyeMart's promissory estoppel claim must be premised on a duty independent from those duties imposed by the Agreement.  "A tort claim based upon the same actions as those upon which a claim of contract breach is based will exist independently of the contract action only if the breaching party also breaches a duty owed separately from that created by the contract, that is, a duty owed even if no contract existed." Textron Fin Corp., 115 Ohio App. 3d at 151, 684 N.E.2d 1261, 1270.  This has long been the rule in Ohio.  See, e.g., Bowman v. Goldsmith Bros. Co. (Ct. App. 1952), 63 Ohio Law Abs.  428, 109 N.E. 2d 556 ("The mere omission to perform a contract obligation is never a tort unless the omission is also the omission to perform a legal duty.  In other words, an action of tort for negligence cannot be maintained unless the defendant's conduct constituted the breach of a duty imposed by law, apart from it being a breach of an obligation created by agreement of the parties…."); Battista, 538 F.2d at 117 ("A tort exists only if a party breaches duty which he owed to another independently of the contract, that is, a duty which would exist if no contract existed … The tort liability of parties to a contract arises from the breach of some positive legal duty imposed by law because of the relationship of the parties, rather than a mere omission to perform a contract obligation.") (construing Ohio law).  Therefore, EyeMart's

claim fails as a matter of law. In addition, as with the breach of contract claim, EyeMart only sets forth conclusory allegations of the damages supposedly incurred as a result of the alleged promises.

## IV.     **CONCLUSION**

Based on the foregoing, this Court should deny EyeMart's motion for summary judgment. There are clearly disputes of fact as to the claims of EyeMart. EyeMart asserts that M&S failed to perform its duties under the Agreement whereas M&S asserts that it did as it was required to do under the Agreement. Even as to specifics, such as EyeMart's claims that M&S failed to arrange for any meetings to pursue EyeMart business at the ICSC Convention, the evidence gathered from the third parties, with no interest in this litigation, establishes that such meetings were scheduled. Likewise, there are disputes as to the promises alleged to have been made on behalf of M&S. In addition, the parol evidence rule prohibits it from seeking to vary the terms of the Agreement and prevents it from offering evidence in support of its promissory estoppel claim.

More importantly, EyeMart failed to give notice, as required by the Agreement, of any alleged breaches or to exercise the remedy provided for them by the Agreement. The memoranda it purports to have used to give such notice are legally insufficient to do so. Therefore, EyeMart cannot establish the facts needed for either of its claims without dispute of those alleged facts. Based on the foregoing, M&S respectfully requests that EyeMart's motion be denied in all respects.

/s/ Robert A. Pitcairn, Jr.
Robert A. Pitcairn, Jr. (0010293)
Trial Attorney for Plaintiff
255 East Fifth Street, Suite 2400

- 15 -

                                                Cincinnati, Ohio 45202-4787
                                                (513) 977-3477 – telephone
                                                (513) 721-7120 – facsimile
                                                rpitcairn@katzteller.com – e-mail

OF COUNSEL:

Wijdan Jreisat
Katz, Teller, Brant & Hild
255 East Fifth Street, Suite 2400
Cincinnati, Ohio 45202-4787
(513) 721-4532

## **CERTIFICATE OF SERVICE**

    I hereby certify that on April 8, 2004, I electronically filed the foregoing Plaintiff's Memorandum in Opposition to Defendant's Motion for Summary Judgment with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following: Michael W. Hawkins and Jon B. Allison, Trial Attorneys for Defendant, Dinsmore & Shohl, 255 E. Fifth Street, Suite 1900, Cincinnati, Ohio 45202.

                                      /s/ Robert A. Pitcairn, Jr._____
                                      Robert A. Pitcairn, Jr.

KTBH:600222.1