Service: **Get by LEXSEE®**
Citation: **1997 ohio app lexis 3672**

*1997 Ohio App. LEXIS 3672, ** *

RONALD VIOLANTE, et al., Plaintiffs-Appellants, - vs - QUADLAND CORPORATION, et al., Defendants-Appellees.

CASE NO. 96-T-5473

COURT OF APPEALS OF OHIO, ELEVENTH APPELLATE DISTRICT, TRUMBULL COUNTY

1997 Ohio App. LEXIS 3672

August 15, 1997, Decided

**PRIOR HISTORY:** [*1]

CHARACTER OF PROCEEDINGS: Civil Appeal from the Court of Common Pleas, Case No. 93 CV 1541.

This Opinion Substituted by the Court for Vacated Opinion of August 8, 1997, Previously Reported at: 1997 Ohio App. LEXIS 3586.

**DISPOSITION:** JUDGMENT: Affirmed.

## CASE SUMMARY

**PROCEDURAL POSTURE:** Appellant telephone service provider appealed from a Court of Common Pleas (Ohio), which adopted the decision of the magistrate and found in favor of appellee building owner on three breach of contract claims brought by appellant against appellee.

**OVERVIEW:** In three separate contracts, building owner (owner) granted telephone service provider (provider) a lease of that portion of the premises dedicated to providing telephone service to patrons in each of owner's three truck stops. In return, owner would receive a certain percentage of the coin receipts and long-distance telephone charges. Owner notified provider of service problems several times and, although provider made attempts to rectify the problems, he was unable to do so to owner's satisfaction. Owner terminated the contracts and obtained substitute service. Provider filed an action for breach of contract and owner counterclaimed for fraud and breach of contract. The trial court granted judgment for owner on the complaint and for provider on the counterclaim. On appeal, the court found that the contract did not require the nonbreaching party to notify the breaching party, in writing, of the breach, nor did it require the nonbreaching party to give notice, written or oral, of an intent to cancel. Therefore, the court affirmed the trial court's conclusion that provider breached the contracts by failing to provide consistent, reliable and dependable telephone service.

**OUTCOME:** The court affirmed the trial court's judgment in favor of building owner and against telephone service provider.

**CORE TERMS:** telephone, assignment of error, notice, notified, long-distance, counterclaims, nonbreaching, telephone service, prejudicial error, breach of contract, waived, cancel, parol evidence, surcharge, lease, duty, breaching party, cure, written notice, card, downtime, patrons, booths, right to terminate, notification, entire agreement, statute of limitations,

summary judgment, interpreting, twenty-four

## LexisNexis (TM) HEADNOTES - Core Concepts - ◆ Hide Concepts

Civil Procedure > Magistrates > Trial by Consent & Appeal

*HN1* ♦ Ohio R. Civ. P. 53 governs matters pertaining to cases heard by magistrates and provides, in part, that objections to the magistrate's decision shall be specific and state with particularity the grounds of objection. Any objection to a finding of fact shall be supported by a transcript of all the evidence submitted to the magistrate relevant to that fact or an affidavit of that evidence if a transcript is not available. A party shall not assign as error on appeal the court's adoption of any finding of fact or conclusion of law unless the party has objected to that finding or conclusion under this rule. Ohio R. Civ. P. 53(E)(3)(b). More Like This Headnote

Contracts Law > Contract Interpretation > Parol Evidence Rule
Evidence > Relevance > Parol Evidence Rule

*HN2* ♦ The parol evidence rule prohibits the introduction of evidence of prior or contemporaneous agreements between the parties to a written contract to alter its terms when the contract is fully integrated and expresses the entire agreement between the parties. Parol evidence may be admitted to explain ambiguous or uncertain terms and conditions of a written contract. More Like This Headnote

Contracts Law > Performance > Discharges & Terminations

*HN3* ♦ When one party fails to perform his duties under the contract, without legal excuse, he has breached the contract, and the duties of the nonbreaching party are suspended. The breaching party is generally given the opportunity to cure the breach. When the breaching party fails to cure the breach, the nonbreaching party is relieved of any obligation of performance under the contract. More Like This Headnote

Civil Procedure > Appeals > Records on Appeal

*HN4* ♦ Failure to file a complete transcript precludes an appellate court's complete review of an issue. Ohio R. Civ. P. 53(E)(3)(b). More Like This Headnote

**COUNSEL:** ATTY. WILLIAM M. ROUX, Warren, OH (For Plaintiffs-Appellants).

ATTY. RONALD J. RICE, ROBERT C. KOKOR, Hubbard, OH (For Defendants-Appellees).

**JUDGES:** HON. JUDITH A. CHRISTLEY, P.J., HON. ROBERT A. NADER, J., HON. WILLIAM M. O'NEILL, J., CHRISTLEY, P.J., O'NEILL, J., concur.

**OPINIONBY:** ROBERT A. NADER

**OPINION: OPINION**

NADER, J.

This appeal arises from a judgment of the Trumbull County Court of Common Pleas wherein the court, adopting the decision of the magistrate, found in favor of defendants-appellees, Quadland Corporation ("Quadland") and Tewel Corporation ("Tewel"), on three breach of contract claims brought by plaintiffs-appellants, Ronald Violante ("Violante") and ZT&T. The court found in favor of appellants on appellees' breach of contract and fraud counterclaims. n1

- - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n1 The complaint originally included claims against Steven Lukac and C.J. Yasechko individually. Also, Angola Co., Ltd., was named as a plaintiff. However, during the pendency of this case, these parties were dismissed and are not parties to this appeal.

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - - [*2]

Appellant Violante, doing business as ZT&T, began providing long-distance telephone service in 1987; the telephone industry was experiencing many changes during this time due to the "break up" of AT&T. Violante had been an employee in the telephone industry for approximately ten years.

Quadland and Tewel were sister corporations that owned several truck stops in Ohio, Indiana and Pennsylvania. These companies were established by Edward T. Yasechko ("Yasechko, Sr.") who served as the Chairman of the Board of Quadland and the President of Tewel. Yasechko, Sr.'s son, Edward J. Yasechko, ("Yasechko, Jr.") was the President of Quadland and the Vice President of Tewel.

Violante approached Yasechko, Sr., to inquire whether Quadland/Tewel would be interested in doing business with him (*i.e.*, establishing a landlord/tenant relationship and providing telephone service). Mr. Yasechko, Sr., referred Violante to Steven Lukac, Quadland/Tewel's Operations Manager, who was given the responsibility of negotiating a deal with Violante and ZT&T to provide pay telephones and long-distance service in three Quadland/Tewel locations. These three separate "deals" did not occur simultaneously, but [*3] rather evolved over a period of approximately ten months between December 1987 and October 1988.

Eventually, the parties entered into three separate contracts which granted appellants a lease of that portion of the premises dedicated to providing telephone service to patrons in each of three Quadland/Tewel truck stops; appellants were to provide telephones, customized telephone booths and long-distance service (by virtue of an "alternate operator service") for each location. n2 In return, appellees would receive a certain percentage of the coin receipts and long-distance telephone charges. All three contracts are identical in substance except for the location-specific equipment. Of relevance to this appeal are four provisions contained in each contract.

- - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n2 The first two contracts, entered into on December 15, 1987, and June 13, 1988, were between a Telco Corporation and Tewel. Telco immediately assigned its rights and duties under these contracts to Violante and ZT&T. The third contract, executed on October 6, 1988, was between Quadland and Violante, dba ZT&T.

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - - [*4]

"8. BREACH OR CANCELLATION OF THIS AGREEMENT BY EITHER PARTY. If either party fails to comply with the articles spelled out in this agreement, it will constitute a breach of this agreement relieving the other party of any further obligations under this agreement. However the party committing the breach will be given a thirty (30) day period to rectify the complaint before this agreement

becomes null and void.

"9. *** f) ENTIRE AGREEMENT. This instrument contains the entire agreement by and between the parties hereto.

"g) NOTICES. All notices which are required to be in writing shall be delivered to the addresses set forth above. Each party shall notify the other of any change of address by providing the other party thirty (30) days prior written notice.

"OTHER ITEMS: System accepts AT&T, Visa, Master Card, American Express, Diner's Club, etc. Surcharge equivalent to AT&T. Service: 24 hours or less on down time."

Almost immediately after the installation of appellants' telephone equipment in each location, appellees began to receive complaints about the telephones and the long-distance telephone service and charges; patrons complained that the telephones were not working, [*5] they were unable to reach an AT&T operator to use their AT&T calling cards, and the charges imposed by appellants' alternate operator service were excessive. These complaints continued and even increased over a period of approximately three years. Appellees claim they repeatedly notified Violante of the various problems with the telephones and telephone service, to no avail; although Violante made attempts to rectify the problems, he was unable to do so to appellees' satisfaction.

As a result, appellees sent a letter to Violante dated February 2, 1991, terminating the contracts and requesting him to remove the telephone equipment. Although all three locations were specifically referenced in the letter, Mr. Lukac signed it as a representative of Tewel; Quadland was not mentioned in the letter. Because the telephone booths had been customized for each truck stop, appellees were able to negotiate with Violante for the purchase of those booths. n3

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n3 Appellees' new tenant/vendor purchased the booths from Violante for $ 600 each.

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - [*6]

Appellants filed a complaint on September 23, 1993, alleging three counts of breach of contract, for appellees' alleged breach of each contract. n4 Appellees filed an answer which contained two counterclaims--fraud and breach of contract--on October 29, 1993. Appellants filed a motion to dismiss or, in the alternative, a motion for a more definite statement on May 27, 1994. Appellees responded with a memorandum in opposition and motion for summary judgment on July 15, 1994. n5 After the matter was referred to a magistrate, the case was bifurcated into two phases--liability and damages. The magistrate converted appellants' motion to dismiss into a motion for summary judgment and gave notice to the parties. The magistrate then denied both parties' motions for summary judgment.

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n4 Apparently, the complaint in this case was the refiling of a prior complaint voluntarily dismissed by appellees. R.C. 2305.19.

n5 Each party engaged in extensive discovery during the early pendency of this action.

- - - - - - - - - - - End Footnotes- - - - - - - - - - - - -

The case **[*7]** proceeded to trial on the issue of liability before the magistrate on November 14-15, 1995. The magistrate's decision was filed on January 26, 1996, which recommended that the trial court enter judgment in favor of appellees on the complaint and in favor of appellants on the counterclaims. Appellants filed their objections to the magistrate's decision on February 28, 1996, after obtaining leave to do so, but included only a transcript of the testimony of Steven Lukac. Appellees filed their response on March 4, 1996. On April 10, 1996, the trial court adopted the decision of the magistrate. Appellants appeal, n6 asserting seven assignments of error:

- - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n6 Appellants' notice of appeal was dismissed *sua sponte* on July 19, 1996, because it was not timely filed and did not comply with Local Rule 5(B), which requires an affidavit from the trial court clerk when service of the trial court's judgment is not made pursuant to Civ.R. 58 (B). Upon appellants' uncontested motion for reconsideration, construed as a motion to reinstate the appeal, we vacated our judgment dismissing appellants' appeal and reinstated it on August 14, 1996.

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - **[*8]**


"1. The trial court committed prejudicial error by failing to dismiss, and further, by allowing testimony relevant to, Appellees' counterclaims for fraud.

"2. The Trial Court committed prejudicial error when it admitted, despite the presence of an integration clause, parol evidence to prove the terms of the lease agreements between the parties.

"3. The Trial Court committed prejudicial error in failing to find that written notice was required under Paragraph 8 of the lease agreement.

"4. The Trial Court committed prejudicial error in finding that the parties intended the term 'surcharge' to mean anything other than the usual meaning accepted and understood in the telephone industry.

"5. The Trial Court committed prejudicial error in failing to find that the doctrine of waiver applied as a defense to appellees purported exercise of the right to forfeiture.

"6. The trial court committed prejudicial error when it completely missed the crucial issue of notice related to 'downtime' of the telephones.

"7. The trial court committed prejudicial error when it determined that Appellants were sufficiently notified of problems by Appellees to require rectification within thirty (30) **[*9]** days."

For their first assignment of error, appellants assert that the trial court erred in failing to dismiss appellees' counterclaims for fraud n7 on statute of limitations grounds. Appellants also claim that, had these counterclaims been properly dismissed, certain prejudicial testimony would not have been admitted. Appellants did not raise this issue in their objections to the magistrate's decision, however.

- - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n7 Part of appellants' attack is that, although one was captioned "breach of contract," appellees actually alleged two counterclaims for fraud, instead of one for fraud and one for breach of contract.

- - - - - - - - - - - End Footnotes- - - - - - - - - - - - - -

New HN1 Civ.R. 53 governs matters pertaining to cases heard by magistrates and provides, in pertinent part:

> "Objections [to the magistrate's decision] shall be specific and state with particularity the grounds of objection. *** Any objection to a finding of fact shall be supported by a transcript of all the evidence submitted to the magistrate relevant to that fact or an affidavit of that evidence [*10] if a transcript is not available. A party shall not assign as error on appeal the court's adoption of any finding of fact or conclusion of law unless the party has objected to that finding or conclusion under this rule." Civ.R. 53(E)(3)(b).

Thus, an appellate court will not address an appellant's assignment of error if he failed to raise the issue before the trial court in his objections to the magistrate's decision. Because appellants here did not raise the issue of statute of limitations in their objections to the magistrate's decision, they waived their right to assert this error on appeal, and their first assignment of error is, therefore, overruled. Civ.R. 53(E)(3)(b). n8

- - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n8 Although not determinative of any of the issues in this matter, the parties may find of interest the case of *Summers v. Connolly* (1953), 159 Ohio St. 396, 112 N.E.2d 391, explaining the applicability of the statute of limitations to counterclaims and defense.

- - - - - - - - - - - End Footnotes- - - - - - - - - - - - - -

By their second assignment of error, appellants maintain the trial [*11] court erred in admitting and relying upon parol evidence in interpreting the contracts between the parties.

HN2 The parol evidence rule prohibits the introduction of evidence of prior or contemporaneous agreements between the parties to a written contract to alter its terms when the contract is fully integrated and expresses the entire agreement between the

parties. *Ed Schory & Sons, Inc. v. Francis* (1996), 75 Ohio St. 3d 433, 440, 662 N.E.2d 1074. Parol evidence may be admitted to explain ambiguous or uncertain terms and conditions of a written contract. *Yoder v. Columbus & Southern Ohio Elec. Co.* (1974), 39 Ohio App. 2d 113, 115, 316 N.E.2d 477.

Primarily, we note that appellants have failed to identify with any degree of specificity what parol evidence was relied upon by the magistrate and the judge and to point out which provisions of the contracts were interpreted using parol evidence. Appellants are required to cite specific portions of the transcript upon which they rely in their brief. App.R. 16(A)(7). If they do not, we are permitted to disregard the assignment of error. App.R. 12(A)(2).

Additionally, appellants did not provide the trial court with a complete transcript [*12] of the proceedings and evidence before the magistrate in support of their objections to the decision, although they included a complete transcript in the record on appeal. We are not permitted to review or rely upon any materials that were not before the trial judge. *Witt v. J & J Home Ctrs., Inc.* (Apr. 26, 1996), 1996 Ohio App. LEXIS 1703, Geauga App. No. 95-G-1939, unreported, at 4, citing *Belock v. Belock* (Mar. 25, 1994), 1994 Ohio App. LEXIS 1246, Geauga App. No. 92-G-1748, unreported. Moreover, in the absence of a complete transcript of the evidence before the magistrate and because the trial court did not conduct an evidentiary hearing, the trial court and this court must accept the factual findings contained in the magistrate's decision. Civ.R. 53(E)(3)(b); *Ohio Edison Co. v. Gilmore* (1995), 106 Ohio App. 3d 6, 10-11, 665 N.E.2d 226 (applying former Civ.R. 53). Without a complete transcript of the evidence, we are unable to review the proceedings to determine which evidence appellants object to as parol.

Also, after reviewing the magistrate's decision, we find only one reference to parol evidence. In Paragraph 20, the magistrate made findings regarding appellees' expectations of the contracts with regard [*13] to long-distance telephone charges and service. Appellees wanted to ensure that their patrons would experience no interruptions in service and would be charged the same for long-distance calls as AT&T. Even assuming the magistrate relied upon the information in this one paragraph, out of sixteen pages of factual findings and legal conclusions, to interpret any portion of the contracts, we cannot perceive any prejudice that may have resulted to appellants. Appellees' expectations were also expressed in the language of the contracts. In paragraph 1(b), the contracts provide:

> "RESPONSIBILITIES OF VENDOR [Appellants]. The Vendor shall: *** maintain the Equipment in proper working order and, when notified, repair the Equipment within a 24 hour period after notice from Landlord[.]"

Moreover, the contracts provided that AT&T, Visa, MasterCard and other credit cards would be accepted by the telephone system. The contracts also stated that "downtime" on the telephones would be limited to twenty-four hours, after notice to appellants of any problems. In light of the contracts' terms, we can see no prejudice to appellants from the admission of any evidence of appellees' expectations. [*14] Therefore, any error would be harmless.

Accordingly, appellants' second assignment of error is meritless.

For their third assignment of error, appellants challenge the trial court's conclusion that the notice of termination need not be in writing. Specifically, appellants point to Paragraph 9(g) which, they claim, requires all notices under the three contracts to be in writing. n9 Appellants misinterpret the language of the contracts, however. Actually, paragraph 9(g)

provides, "All notices *which* are required to be in writing" must be sent to an address which appears on the contracts. (Emphasis added.) This paragraph does not require that all notices under the contracts be in writing; it merely provides the location to which written notices must be sent. n10

- - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - -

n9 We find unpersuasive the arguments regarding construing the contracts against the drafter in this case, because the parties drafted these agreements together. Mr. Violante supplied the initial document which was altered during the negotiations; Mr. Lukac then instructed a Quadland/Tewel employee to type up the agreement. As a result, we conclude the contracts here were drafted by both parties and the rule of construction noted above is inapposite. **[*15]**

n10 Ironically, though, the contracts contain no addresses.

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - -

Appellants claim Paragraph 8 is a "forfeiture clause," which must be construed strictly against appellees. In actuality, this paragraph merely restates the law of contract. *HN3* When one party fails to perform his duties under the contract, without legal excuse, he has breached the contract, and the duties of the nonbreaching party are suspended. *National City Bank of Cleveland v. Erskine & Sons, Inc.* (1953), 158 Ohio St. 450, 110 N.E.2d 598, paragraph one of the syllabus. The breaching party is generally given the opportunity to cure the breach. *Kogge, Inc. v. Axe* (Apr. 18, 1991), Auglaize App. No. 2-90-9, unreported, at 5, 1991 Ohio App. LEXIS 1898, citing *Higby v. Whittaker* (1837), 8 Ohio 198. When the breaching party fails to cure the breach, the nonbreaching party is relieved of any obligation of performance under the contract. Paragraph 8 merely incorporates these precepts into these contracts, granting the breaching party the right to cure before the nonbreaching party may be relieved of his duties and cancel the contract. **[*16]** This paragraph does not require the nonbreaching party to notify the breaching party, *in writing,* of the breach, nor does it require the nonbreaching party to give notice, *written or oral,* of an intent to cancel. Had the parties intended that the notification of breach and opportunity to cure be in writing, they would have used the appropriate language they used in Paragraph 9 and in Paragraph 3(a). At the end of Paragraph 9(g), the parties agreed that a change of address requires *written* notification to the other party. Paragraph 3(a) is the contract-renewal provision which contains a "written notice" requirement. The agreement will be automatically renewed for an additional term of one year unless either party notifies the other in writing of an intent not to renew. As a result, the magistrate and trial court did not err in interpreting these contracts to require only oral notification of breach.

Accordingly, appellants' third assignment of error is without merit.

Appellants advance, as their fourth assignment of error, that the magistrate and trial court erred in failing to attribute to the term "surcharge" its technical meaning in the telephone industry.

Even were **[*17]** we to agree that the magistrate's and the trial judge's interpretation of the word "surcharge" was erroneous, we fail to perceive any prejudice to appellants as the decision in this case was based on more than merely the issue of excessive charges. The magistrate and trial court concluded that appellants breached the contracts by failing to provide consistent, reliable and dependable telephone service (*i.e.,* the telephones were not

operational for periods of more than twenty-four hours and the telephone system occasionally did not accept AT&T calling cards). Because the decision in this case was predicated upon more than just the issue of surcharge, any error that may have occurred in interpreting this contract provision was harmless.

Appellants' fourth assignment of error lacks merit.

By their fifth assignment of error, appellants maintain that appellees waived any right to terminate the contracts under Paragraph 8 by failing to invoke it in a timely manner. In support, appellants cite several cases on the law of waiver. *Finkbeiner v. Lutz* (1975), 44 Ohio App. 2d 223, 337 N.E.2d 655; *Central Ohio Co-Operative Milk Producers, Inc. v. Rowland* (1972), 29 Ohio App. 2d 236, [*18] 281 N.E.2d 42; *Motz v. Root* (1934), 53 Ohio App. 375, 4 N.E.2d 990; *The Newman Club of Columbus v. Higgy* (1920), 13 Ohio App. 227. These cases are distinguishable from the instant case in one important respect. In all these cases, the courts held that the nonbreaching party failed to object to the breaching party's actions. As a result, the nonbreaching party assented to the new contract terms and waived any rights under the "old" contract provisions. For instance, in *Finkbeiner, supra,* the parties had entered into an agreement for the lease of some commercial property. Appellants repeatedly accepted late rental payments from appellees without objection. When appellees failed to make a timely rental payment some nine years after the lease was originally executed, appellants sent them notice that the lease had been forfeited due to the failure to make a timely rental payment. The First District Court of Appeals held that appellants waived their right to forfeiture due to their "failure *** to make timely objection." *Finkbeiner,* 44 Ohio App. 2d at 227.

Conversely, in this case, appellees repeatedly notified appellants of the problems with the telephone systems and appellees' [*19] duty to correct them in a timely fashion. After exhausting all of their options without relief, appellees merely invoked the provisions of contract law contained in Paragraph 8 and notified appellants, in writing, that the contracts were terminated. Merely because appellees gave appellants ample opportunity to cure the breach before announcing their intent to terminate the relationship does not require a finding that they waived any right to terminate the contracts, although it may be said that appellees waived the thirty-day curative provision. Even assuming the thirty-day curative period was impliedly extended by virtue of the conduct of the parties, appellees' right to terminate the agreement was not negated. Appellees gave appellants more time than was required of them to cure the numerous breaches. When appellees failed to do so, appellants formally notified appellees of the cancellation of the agreements by letter dated February 2, 1991. Accordingly, appellants' fifth assignment of error is meritless.

Appellants argue, for their sixth assignment of error, that the trial court did not address the issue of notice to appellants of telephone malfunction to trigger the twenty-four [*20] hour downtime limitation in the contracts. Specifically, appellants claim there was no testimony that during any downtime appellants were notified of the telephone problems. However, appellants failed to file a complete transcript with their objections. As such, the trial court was required, as are we, to accept the factual findings of the magistrate in the absence of a complete transcript of the evidence and without conducting its own evidentiary hearing. *Gilmore, supra* at 6. In Paragraph 28 of the decision, the magistrate made a finding that appellants were notified when the telephones were not operational and failed to adequately correct the problems. Because we are unable to disturb this factual finding in the absence of a transcript, appellants' sixth assignment of error is without merit.

Finally, appellants contend that the trial court erred in concluding appellants were sufficiently notified of the problems with the telephones and appellees' intent to terminate the contracts. We first note that, as discussed under appellants' third assignment of error, there was no written notice of breach or notice of intent to cancel requirements contained in Paragraphs 8 or 9 of the [*21] contracts. As such, appellants' specific arguments, that the two letters

sent to appellants did not constitute sufficient notice of breach and intent to cancel, are meritless. Moreover, appellants' [HN4] failure to file a complete transcript precludes our complete review of this issue. Civ.R. 53(E)(3)(b).

The magistrate's decision contained ample facts to support the conclusion that appellants were repeatedly notified of the problems with the telephones and the long-distance telephone service (*i.e.*, patrons were unable to reach an AT&T operator and were unable to use their AT&T calling cards) and failed to rectify them. Appellees were then within their rights to cancel the contracts, without further notice or thirty-day curative periods. Thus, appellants' seventh assignment of error is overruled.

In accordance with the foregoing analysis, the judgment of the Trumbull County Court of Common Pleas is affirmed.

JUDGE ROBERT A. NADER

CHRISTLEY, P.J.,

O'NEILL, J.,

concur.

Service: **Get by LEXSEE®**
Citation: **1997 ohio app lexis 3672**
View: Full
Date/Time: Thursday, April 8, 2004 - 11:40 AM EDT

* Signal Legend:
- Warning: Negative treatment is indicated
- Caution: Possible negative treatment
- Positive treatment is indicated
- Citing Refs. With Analysis Available
- Citation information available

* Click on any *Shepard's* signal to *Shepardize®* that case.

About LexisNexis | Terms and Conditions

Copyright © 2004 LexisNexis, a division of Reed Elsevier Inc. All rights reserved.