Michael W. Hawkins (0012707)<br>
Jon B. Allison (0073955)<br>
Attorneys for Defendant EyeMart Express, Ltd.

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

| | | |
|---|---|---|
| M&S ADVISORY GROUP, INC., | : | Case No. C-1-02-522 |
| | : | |
| Plaintiff, | : | Judge Spiegel |
| | : | Magistrate Judge Hogan |
| vs. | : | |
| | : | **DEFENDANT EYEMART EXPRESS,** |
| EYEMART EXPRESS, LTD., | : | **LTD.'S SECOND AMENDED** |
| | : | **COUNTERCLAIM** |
| Defendant. | : | |

Defendant EyeMart Express, Ltd. ("EyeMart"), for its Second Amended Counterclaim, states the following:

1.  Around January, 2002, M&S Advisory Group, Inc. ("M&S") and EyeMart engaged in discussions about the possibility of entering into an agreement under which M&S would provide services to EyeMart related to the negotiation of leases for EyeMart for various locations around the country.  During these discussions, M&S made several promises and representations regarding what it could and would do for EyeMart pursuant to an agreement between M&S and EyeMart.  For example, M&S promised and represented that it could and would fully negotiate at least 12 to 18 leases in the first year of any such agreement and that EyeMart would be able to open 12 to 18 branch locations in the first year of any such agreement. M&S further promised and represented that it would continue to negotiate leases at least at the same pace in subsequent years.  M&S further promised and represented that M&S would obtain lower rents on leases for EyeMart than EyeMart could otherwise obtain.  M&S further promised and represented that EyeMart employees could cease numerous activities related to lease negotiation because M&S would take full responsibility for such activities.  M&S further promised and represented that it would obtain leases for EyeMart in specific locations that had

1011019_1.DOC

been identified by EyeMart. M&S further promised and represented that it would arrange for meetings between EyeMart representatives and major mall developers at the International Council of Shopping Centers in Las Vegas, Nevada in May of 2002. From February to May of 2002, M&S repeated these promises and representations to EyeMart on numerous occasions.

2.  M&S never intended to follow through on the promises and representations made to EyeMart.

3.  In late January, 2002, M&S entered into a Consulting Agreement ("Agreement") with EyeMart. A copy of the Agreement is attached to Plaintiff's Complaint as Exhibit A. The Agreement became effective February 1, 2002.

4.  Under the terms of paragraph 2 of the Agreement, "[c]onsultant will act as EyeMart's exclusive leasing agent for all locations. Consultant shall make Martin Sherman available at mutually agreed times and locations for such consultation and assistance as requested and Consultant and Martin Sherman may represent themselves as the 'Director of Retail Development' of EyeMart or such other title as mutually agreed upon by the parties. The parties anticipate that Martin Sherman will attend meetings at EyeMart headquarters as necessary for the purpose of discussion of lease negotiations and ongoing site selection strategy. All communications from the Consultant to EyeMart shall be made to such individuals as may be designated by EyeMart."

5.  M&S, without excuse, failed to perform its obligations under the Agreement.

6.  EyeMart intended to, with the assistance of M&S, open 12 to 18 branch locations per year beginning in 2002. From February 1, 2002 until May 23, 2002, during which time EyeMart paid M&S in excess of $40,000, M&S failed to facilitate the consummation of a single lease agreement.

7.  On numerous occasions from February to May, 2002, EyeMart selected locations at which EyeMart wanted to open branches, and instructed M&S to contact those locations and

attempt to negotiate lease agreements. On several occasions, EyeMart contacted M&S about its progress in obtaining lease agreements with those locations, and M&S representative Sherman stated he was "working on it." However, when EyeMart representatives contacted some of those locations, they discovered that M&S never had made contact to negotiate lease agreements with those locations on behalf of EyeMart. In fact, with regard to locations designated as the highest priority, Sherman did not attempt to make any contact (not even a telephone call) for several months.

8. On a number of occasions, M&S took action it should not have taken. On one occasion, M&S representative Sherman took a trip, paid for by EyeMart, and met with developers, one of which was General Growth. M&S had not discussed this trip with EyeMart. Sherman was aware, prior to taking the trip, that EyeMart had already met with General Growth to discuss future growth opportunities and that his meeting with General Growth would be duplicative and unproductive.

9. From February to May, 2002, EyeMart representatives discussed with M&S representative Sherman, on numerous occasions, Sherman's continuing failure to perform the Agreement.

10. In May, 2002, M&S representative Sherman had a conversation with EyeMart representatives in which he suggested the Agreement be terminated due to mistrust that was developing between the parties to the Agreement. Shortly thereafter, when contacted about his intentions with regard to performing the Agreement, Sherman denied he had mentioned the termination of the Agreement.

11. Later in May, 2002, EyeMart representatives traveled to Las Vegas, Nevada for the International Council of Shopping Centers. Months in advance of the convention, both before and after the execution of the Agreement, M&S representative Sherman promised and represented to EyeMart that he would arrange for several meetings at the convention between

major mall developers and EyeMart representatives, specifically H. Doug Barnes, O.D., President & Chief Executive Officer of EyeMart. At the convention, Sherman advised Barnes that he failed to arrange for any meetings between major mall developers and EyeMart.

12. Instead, Sherman had arranged to spend the entire convention in meetings with Crabtree & Evelyn, Sherman's other client that attended the convention. For several years prior to 2002, representatives from Crabtree & Evelyn worked closely with Sherman each year to set the schedule for the annual ICSC convention in Las Vegas. The general practice was for Sherman to spend nearly the entire convention with representatives from Crabtree & Evelyn in meetings for Crabtree & Evelyn. Crabtree & Evelyn was not even aware that EyeMart would be attending the May 2002 convention.

## COUNT I - BREACH OF CONTRACT

13. EyeMart repeats and realleges each and every averment contained in paragraphs 1 through 12, inclusive, as if fully set forth herein.

14. M&S's actions in failing to perform under the terms of the Agreement constitute a breach of contract, and Defendant EyeMart Express, Ltd. is entitled to an award of damages, including interest, in an amount to be proven at trial.

## COUNT II - PROMISSORY ESTOPPEL

15. EyeMart repeats and realleges each and every averment contained in paragraphs 1 through 14, inclusive, as if fully set forth herein.

16. From January to May, 2002, M&S made several promises and representations to EyeMart as set forth in paragraphs 1-12 of this Second Amended Complaint.

17. EyeMart justifiably relied upon M&S's promises and representations to its detriment.

18. M&S's failure to fulfill its promises and representations to EyeMart caused EyeMart to be damaged, including interest, in an amount to be proven at trial.

## COUNT III - FRAUD

19.  EyeMart repeats and realleges each and every averment contained in paragraphs 1 through 18, inclusive, as if fully set forth herein.

20.  M&S never intended to follow through on the promises and representations made to EyeMart, but intended that EyeMart would rely on the false representations.

21.  EyeMart justifiably relied upon M&S's promises and representations to its detriment.

22.  M&S's failure to fulfill its promises and representations to EyeMart caused EyeMart to be damaged, including interest, in an amount to be proven at trial.

WHEREFORE, Defendant EyeMart Express, Ltd. requests an award of damages to be determined at trial, and that Defendant EyeMart Express, Ltd. be awarded reasonable costs, attorneys' fees, interest, and any other legal and/or equitable relief to which it may be entitled.

Respectfully submitted,

/s/ Michael W. Hawkins
Michael W. Hawkins (0012707)
Jon B. Allison (0073955)
DINSMORE & SHOHL, LLP
1900 Chemed Center
255 East Fifth Street
Cincinnati, Ohio  45202
513/977-8200 (Phone)
513/977-8141 (Fax)

Trial Attorneys for Defendant,
EyeMart Express, Ltd.

## CERTIFICATE OF SERVICE

I hereby certify that on April 30, 2004, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following:

Robert A. Pitcairn, Jr., Esq.
Wijdan Jreisat, Esq.
Katz, Teller, Brant & Hild
255 East Fifth Street
Suite 2400
Cincinnati, Ohio 45202-4787

/s/ Jon B. Allison
Jon B. Allison (0073955)